UNITED STATES of America, Appellee,

v.

Oltrado Michaelangelo LISOTTO, Appellant.

UNITED STATES of America, Appellee,

v.

John James PELLA, Appellant.

Nos. 82–5329, 82–5333.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 7, 1983.

Decided Dec. 1, 1983.

Rehearing Denied Dec. 28, 1983.
Certiorari Denied March 26, 1984.
See 104 S.Ct. 1682.

William B. Cummings, Alexandria, Va., for appellant Lisotto.

Stanley E. Preiser, Charleston, W.V., (Frederick D. Fahrenz, Jeffrey K. Matherly, Sherri D. Goodman, Preiser & Wilson, Legal Corp. Charleston, W.V., on brief), for appellant Pella.

Raymond A. Jackson, Asst. U.S. Atty., Norfolk, Va., (Elsie L. Munsell, U.S. Atty., Alexandria, Va., on brief), for appellee.

Before HALL and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

K.K. HALL, Circuit Judge:

Oltrado Michaelangelo Lisotto and John James Pella appeal from their jury convictions of conspiring to possess marijuana in violation of 21 U.S.C. § 841(a)(1). Finding no error, we affirm.

### I.

On the morning of July 19, 1982, DEA agents, posing as drug dealers, met with Jerry Bishop at Horne's Coliseum Inn outside Norfolk, Virginia, and discussed the sale of approximately 2,700 pounds of marijuana for $370,000. The agents left and returned again that afternoon to meet Bishop's friend, Jerry Schocket. Schocket and the agents then left the Coliseum Inn to inspect the marijuana. Upon inspecting the marijuana, Schocket indicated that he wanted to buy the entire allotment of 4,600 pounds, rather than the lesser amount previously discussed. Schocket and the agents then returned to the Coliseum Inn and met with Bishop.

Bishop stated that he wanted to buy all the marijuana, and that although he did not then have the purchase money, he expected to have it the following day. Meanwhile, Schocket went to Bishop's hotel room and placed several phone calls. Telephone toll records for Bishop's room showed that three long distance calls were made to the Pitts-

burgh, Pennsylvania, area. Two of these calls were made to appellant Pella's house. When Schocket returned from Bishop's room he confirmed to the agents that he and Bishop would have the money the next day.

The following morning, on July 20, DEA agents in Pittsburgh, Pennsylvania, observed appellants Pella and Lisotto, a licensed pilot, board a commercial flight for Norfolk, Virginia. Pella was carrying a shoulder bag; Lisotto did not carry any baggage. Upon arrival in Norfolk that afternoon, Pella and Lisotto took a taxi to the Sheraton Inn, where Schocket was staying.

Later that same afternoon government agents met with Bishop in the lounge of the Sheraton Inn. When this meeting began, the agents observed Lisotto on the other side of the lounge. Pella later joined Lisotto, and they moved to a table at the entranceway of the lounge. Bishop informed the agents that he had received the money to complete the transaction and that he would have Schocket bring it downstairs to them. Bishop then went up to Schocket's room. Pella and Lisotto followed him. When Schocket came downstairs with the money, he was arrested.

Bishop, Pella, and Lisotto were arrested immediately afterwards in Schocket's hotel room. When Lisotto was arrested, the DEA agents seized from him his pilot's license and a slip of paper with Bishop's hotel telephone number. After arresting Pella, the DEA agents seized from him a slip of paper containing the hotel telephone numbers of Bishop and Schocket. Following Bishop's arrest, and pursuant to a search warrant, the agents took from Bishop's belongings a slip of paper bearing Pella's home telephone number in Pittsburgh.

In July, 1982, Lisotto, Pella, Bishop, and Schocket were indicted for conspiracy to possess and distribute marijuana, interstate travel to promote an unlawful activity, and possession of cocaine. Although Bishop and Schocket were fugitives at the time of the trial, all co-defendants were tried before a jury in October, 1982. At trial, the district judge admitted certain out-of-court statements of Bishop and Schocket which implicated Pella and Lisotto in the conspiracy.[1] The trial judge ruled that these statements were admissible under Fed.R.Evid. 801(d)(2)(E)[2] because there was sufficient independent evidence to establish that Pella and Lisotto were members of the conspiracy.

Bishop and Schocket were convicted on all counts. Pella and Lisotto were found guilty only of the conspiracy charge. They now appeal these convictions.

## II.

Appellants' central contention on appeal is that the trial judge erred in admitting Bishop and Schocket's out-of-court statements about appellants because the independent evidence presented was insufficient to convict them. Appellants further contend that because Bishop and Schocket were not at the trial, the admission of these statements violated appellants' Sixth Amendment right to confront their accusers. We disagree.

Appellants initially argue that the evidence upon which the jury could rely to find appellants guilty beyond a reasonable doubt showed no more than appellants' mere association with their co-defendants. This contention, however, fails to consider the inculpatory nature of the independent evidence presented. The record indicates that Bishop did not have the money to buy the

---

1. These statements included Schocket's explanation that the money was coming from Pittsburgh, and that the marijuana would be flown to Pittsburgh, and Bishop's observation that one of the men coming from Pittsburgh was a pilot. Following Pella and Lisotto's flight into Norfolk, Bishop also informed the DEA agents that the people from Pittsburgh had arrived with the money.

2. Pursuant to Fed.R.Evid. 801(d)(2)(E), a statement against a defendant is not hearsay if it is made "by a co-conspirator ... during the course of and in furtherance of the conspiracy."

**88**

marijuana when he first offered to purchase it. Two phone calls were then made from Bishop's hotel room to Pella's home telephone number in Pittsburgh, and within hours Pella and Lisotto travelled from Pittsburgh and arrived at Schocket's hotel. The money was delivered on the afternoon of their arrival. Both were within sight of Bishop's and the DEA agent's final negotiations for the drugs. Both were arrested in Schocket's room immediately following the drug transaction. Upon their arrests, evidence was seized from both appellants linking them to Bishop and Schocket. These facts and all inferences that logically may be drawn from them were sufficient, apart from any hearsay, to support appellants' convictions. Given this independent evidence, the district judge did not err in admitting statements under the co-conspirator exception to the hearsay rule, and the jury was warranted in finding beyond a reasonable doubt that a conspiracy existed and that appellants knew of it and joined in it.

█ Likewise, we find no merit in appellants' contention that admission of the statements at issue violated their Sixth Amendment rights. In *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Supreme Court identified two restrictions the Confrontation Clause places on the use of hearsay evidence in criminal trials. First, the prosecution generally must establish that the declarant is unavailable. Second, the statement may be admitted only if it bears adequate "indicia of reliability." *Id.* at 65, 100 S.Ct. at 2539.

In this case, the government has met both of the restrictions identified in *Ohio v. Roberts.* It is undisputed that the co-defendants were fugitives—and thus, unavailable—at the time of trial. Moreover, the statements were reliable because they were against the co-defendants' penal interests and further established their complicity in the conspiracy. Appellant's Sixth Amendment argument is therefore without merit.

### III.

After a careful review of the record, we have determined that appellants' additional challenges to the judgment below are also without merit. For the foregoing reasons, we conclude that there was sufficient evidence to support the verdicts of guilt beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Sherman,* 421 F.2d 198, 199–200 (4th Cir.), *cert. denied,* 398 U.S. 914, 90 S.Ct. 1717, 26 L.Ed.2d 78 (1970). Accordingly, the convictions are affirmed.

AFFIRMED.