**UNITED STATES of America**

v.

**Joseph MALENO.**

**Crim. No. 83–0041–2.**

United States District Court, E.D. Pennsylvania.

March 4, 1985.

Robert E. Welsh, Jr., Asst. U.S. Atty., Philadelphia, Pa., for United States.

Mark D. Schaffer, Philadelphia, Pa., for petitioner Maleno.

## OPINION

LOUIS H. POLLAK, District Judge.

Joseph Maleno has petitioned, pursuant to 28 U.S.C. § 2255, for a new trial. Mr. Maleno contends that his conviction was based in part on the out-of-court statements of co-conspirators who were not present at trial and who consequently could not be cross-examined. The government did not show at trial and has not shown since that all the authors of these statements were unavailable at the time of trial. Mr. Maleno contends that under the Third Circuit's recent decision in *United States v. Inadi,* 748 F.2d 812 (3d Cir.1984), he must therefore receive a new trial. The govern-

ment has responded to Mr. Maleno's petition.

On February 8, 1983, Joseph Maleno and twelve other individuals were indicted for conspiracy to distribute methamphetamine and related crimes. Five months later, Maleno and four codefendants were tried before this court without a jury. In the course of a five-day trial, a large number of taped telephone conversations (and transcripts thereof) were introduced into evidence. Mr. Maleno took part in a number of these conversations; others involved either Mr. Maleno's codefendants, other individuals who were indicted but not on trial, or unindicted co-conspirators. At the conclusion of the trial, Joseph Maleno was convicted of one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846, twenty-one counts of unlawful use of a communication facility in violation of 21 U.S.C. § 843(b), and one count of possession of methamphetamine with intent to deliver in violation of 21 U.S.C. § 841(a)(1). On September 1, 1983, Mr. Maleno was sentenced to (1) five years of incarceration for conspiracy, (2) four yers of incarceration (consecutive to the incarceration imposed for the conspiracy conviction), two years of special parole, and a $10,000 fine for possession with intent to distribute, and (3) two years of probation (concurrent to the special parole) for unlawful use of a communication facility. Mr. Maleno appealed his conviction to the Court of Appeals for the Third Circuit, which affirmed the conviction. 738 F.2d 426. The Supreme Court denied certiorari on October 15, 1984. —— U.S. ——, 105 S.Ct. 298, 83 L.Ed.2d 232.

On November 13, 1984, the Court of Appeals for the Third Circuit issued its opinion in *United States v. Inadi,* 748 F.2d 812 (3d Cir.1984). In *Inadi,* the Court of Appeals held, *inter alia,* that out-of-court statements of co-conspirators may not, consistent with the Sixth Amendment's Confrontation Clause, be offered for their truth unless (1) the declarant is available for cross-examination at trial, or (2) the government has made a good-faith effort

to obtain the declarant's presence at trial. 748 F.2d at 818–19.

Mr. Maleno argues that *Inadi* compels the grant of a new trial in this case. In support of this argument, Mr. Maleno contends that tapes of a number of conversations to which he was not a party were admitted into evidence at trial, that some of these conversations involved persons who were not present at trial and whom the government made no effort to produce, and that the out-of-court statements of these absent individuals were inculpatory as to Mr. Maleno.

The government responds with several arguments,[1] only one of which I need reach here. The government argues, correctly in my view, that because the out-of-court statements in question were not used for their truth, *Inadi* is inapplicable.

## I.

The Sixth Amendment guarantees a criminal defendant "the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. The guarantee is an important one, going directly to the "integrity of the fact-finding process." *Berger v. California*, 393 U.S. 314, 315, 89 S.Ct. 540, 541, 21 L.Ed.2d 508 (1969); *Ohio v. Roberts*, 448 U.S. 56, 64, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980). It ensures that one charged with a crime cannot be convicted by the accusatory words of those unwilling to testify in open court; at the same time, it serves to protect the public interest in open trials by forcing the government to put on its case where all may see it.

Despite these noble purposes, the Confrontation Clause has never been thought to prohibit the use of *every* statement by a declarant not present at trial. *Ohio v. Roberts, supra*, 448 U.S. at 64–65, 100 S.Ct. at 2538–2539; *United States v. Ammar*, 714 F.2d 238, 255 (3d Cir.), *cert. denied, Stillman v. United States*, — U.S. —, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983). Instead, the policies in favor of requiring the opportunity for effective cross-examination have yielded on occasion to the "strong interest in effective law enforcement" which all jurisdictions share. *Id.* 448 U.S. at 64, 100 S.Ct. at 2538. The Supreme Court expressed the essence of the resulting compromise in *Ohio v. Roberts:*

> The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant....
>
> The second aspect operates once a witness is shown to be unavailable. Reflecting its underlying purpose to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that 'there is no material departure from the reason for the general rule.'

1. The government's brief raises four arguments. First, the government contends that *Inadi* is inapplicable because no co-conspirator statements were offered against Mr. Maleno. Government's Response at 2–3. Second, the government maintains that *Inadi* does not apply because the co-conspirator statements introduced at trial were used by the court (as finder of fact) not for their truth but for the fact of their utterance. *Id.* at 3–4. The government devotes one paragraph apiece, with no citations, to each of these first two arguments. The largest portion of the government's brief is devoted to its third argument—that *Inadi* should be applied only prospectively. *Id.* at 4–7. Finally, the government contends that, if petitioner's view of *Inadi* is accepted, the record in this case should simply be reopened in order to permit the government to introduce evidence of the unavailability of the relevant out-of-court declarants. *Id.* at 7–8.

Because I resolve Mr. Maleno's petition on what the government apparently viewed as a secondary issue—the application of *Inadi* to non-hearsay out-of-court statements—I do not reach other arguments advanced by the government. In particular, I express no view with regard to the question whether *Inadi* is to be applied prospectively only.

448 U.S. at 65, 100 S.Ct. at 2538 (citations omitted).

This passage appears to require that, in order to introduce the out-of-court statements of a declarant absent from trial, the government must show both that the declarant is unavailable and that the declaration is trustworthy. If applicable, such a requirement could potentially lead to a new trial for petitioner, since the government did not claim at trial and does not claim now that all the speakers in the taped conversations introduced against Mr. Maleno were either present in court or unavailable.

There are, however, at least two exceptions to the unavailability requirement which *Roberts* articulated in the passage just quoted and which *Inadi* applied to co-conspirator statements. The first of these derives from *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), in which the Supreme Court permitted the admission of a co-conspirator hearsay statement even though (1) the declarant did not testify at trial and (2) the government made no showing of unavailability. Alex Evans, the defendant in *Dutton*, was convicted of the murder of three police officers who had discovered Evans and an accomplice, Venson Williams, switching the license plates on a stolen car. At trial, a Mr. Shaw testified that he heard Williams say in reference to the case, "If it hadn't been for that dirty son-of-a-bitch Alex Evans, we wouldn't be in this now." *Dutton v. Evans, supra*, 400 U.S. at 77, 91 S.Ct. at 214 (quoting Shaw's testimony). Williams was not called to testify. A plurality of the Supreme Court found no violation of Evans' Sixth Amendment right to confront the witnesses against him, reasoning that there was no real possibility that cross-examination of Williams would have shown the statement to be unreliable. *Id.* at 89, 91 S.Ct. at 220. In *Roberts*, the Court described *Dutton* as a case in which "the utility of trial confrontation [was] so remote that [the Court] did not require the prosecution to produce a seemingly available witness." *Roberts, supra,* 448 U.S. at 65 n. 7, 100 S.Ct. at 2538 n. 7. *See also United States v. Yakobov*, 712 F.2d 20, 24 n. 4 (2d Cir.1983).[2]

■ The second exception to the unavailability requirement derives from the same principle as the first. Those out-of-court statements which are not offered for the truth of the assertions made therein, and are therefore not technically "hearsay," are admissible without regard to the declarant's presence or availability at trial. *Collins v. Francis*, 728 F.2d 1322, 1336 (11th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 361, 83 L.Ed.2d 297 (1984); *United States v. Peaden*, 727 F.2d 1493, 1500 & n. 11 (11th Cir.) *cert. denied,* — U.S. —, 105 S.Ct. 185, 83 L.Ed.2d 118 (1984); *United States v. Bruner*, 657 F.2d 1278, 1285 (D.C. Cir.1981). No Confrontation Clause issue arises as to such statements, because cross-examination of the witness who recounts the out-of-court statement is sufficient to test the accuracy of the witness' account of how, when and by whom the statement was made. As Justice Stewart stated in his plurality opinion in *Dutton v. Evans, supra:*

Evans was not deprived of any right of confrontation on the issue of whether Williams actually made the statement related by Shaw. Neither a hearsay nor a confrontation question would arise had Shaw's testimony been used to prove merely that the statement had been made. The hearsay rule does not prevent a witness from testifying as to what he has heard; it is rather a restriction on the proof of fact through out-of-court statements. From the viewpoint of the Confrontation Clause, a witness under oath, subject to cross-examination, and whose demeanor can be observed by the trier of fact, is a reliable informant not only as to what he has seen but also as to what he has heard.

---

**2.** The Third Circuit referred to this exception only in passing in *Inadi, see* 748 F.2d at 818 n. 4, finding that the government had not raised the issue and that in any event the exception was inapplicable. *Id.*

400 U.S. at 88, 91 S.Ct. at 219 (plurality opinion).[3]

The common thread that runs through these exceptions is the disutility of cross-examination as a vehicle for challenging the out-of-court statement. As the principal purpose of the Confrontation Clause is to ensure "an effective means to test adverse evidence," *Ohio v. Roberts, supra,* 448 U.S. at 65, 100 S.Ct. at 2539, so its exceptions occur when the evidence sought to be introduced is so plainly trustworthy that "testing" by cross-examination is unnecessary. In the case of out-of-court statements offered for the fact that they were made and not for the truth of the assertions they contain, such testing will almost never be necessary; as a result, the introduction of nonhearsay[4] does not trigger a defendant's right to confront witnesses against him. *E.g., Collins v. Francis, supra,* 728 F.2d at 1336. In addition, some very few *hearsay* statements will be self-evidently truthful, so that requiring the opportunity to cross-examine an absent declarant would elevate the form of evidence over its substance. *Dutton v. Evans, supra; Ohio v. Roberts, supra,* 448 U.S. at 65 n. 7, 100 S.Ct. at 2538 n. 7. In either instance, unavailability is not a prerequisite to the introduction of the out-of-court statement, because cross-examination of the declarant would not advance the defendant's legitimate interest in testing the evidence offered against him.

*Inadi,* on which defendant relies so heavily, does nothing to undermine these principles. The co-conspirator statements at issue in that case were "[a]ll ... received as substantive evidence" against the defendant. *United States v. Inadi, supra,* 748 F.2d at 815. Accordingly, the Third Circuit applied the test enunciated in *Ohio v. Roberts* for restricting "the range of admissible hearsay," and found that the failure to show that the absent declarants were unavailable violated the defendant's right to confront the witnesses against him. *Id.* at 818–19. The cases cited to support this result all involved absent declarants' out-of-court statements offered for their truth. *See Ohio v. Roberts, supra; United States v. Lisotto,* 722 F.2d 85 (4th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1682, 80 L.Ed.2d 157 (1984); *United States v. Ordonez,* 722 F.2d 530 (9th Cir.1983), *as amended,* 737 F.2d 793 (9th Cir.1984). *Inadi* thus fails to speak to the question whether a

---

**3.** Justice Marshall's dissenting opinion in *Dutton v. Evans,* in which Justices Black, Douglas, and Brennan joined, appeared to argue that the Confrontation Clause applied to nonhearsay as well as hearsay: "Much of the complexity afflicting hearsay rules comes from the definition of hearsay as an out-of-court statement presented for the truth of the matter stated—a definition nowhere adopted by this Court for confrontation purposes." *Dutton v. Evans, supra,* 400 U.S. at 105 n. 7, 91 S.Ct. at 228 n. 7 (Marshall, J., dissenting). Justice Harlan, who concurred in the result but did not join the plurality opinion, did not address the question whether the clause applies only to hearsay as that word is traditionally defined. Rather, Justice Harlan argued that the confrontation clause was simply a rule of trial procedure, and thus required only that the defendant be permitted to cross-examine whatever witnesses the government chooses to call. *Id.* at 94–97, 91 S.Ct. at 222–224 (Harlan, J., concurring in the result). Thus, the Court in *Dutton v. Evans* divided 4–4 on the question whether the Confrontation Clause applied to out-of-court statements not offered for their truth.

Nevertheless, cases decided since *Dutton* (and since *Ohio v. Roberts, supra* ) have uniformly concluded that the introduction of out-of-court statements which are nonhearsay does not implicate the Confrontation Clause. *See, e.g., United States v. Peaden, supra,* 727 F.2d at 1500 & n. 11 ("We find no cases indicating that the confrontation clause protection extends to evidence that is not hearsay"). The Supreme Court appeared to assume such a rule in *Roberts,* stating that "[t]he Confrontation Clause operates in two separate ways to restrict the range of admissible *hearsay." Ohio v. Roberts, supra,* 448 U.S. at 65, 100 S.Ct. at 2538 (emphasis added).

**4.** Under the Federal Rules of Evidence, certain classes of co-conspirator statements are treated as "statements which are not hearsay." *See* Fed.R.Evid. 801(d)(2)(E). Such statements nevertheless fall within the traditional common-law definition of hearsay, since they are out-of-court statements offered for the truth of the assertions they contain. There is thus no contradiction in the fact that co-conspirator statements offered for their truth under Rule 801(d)(2)(E) trigger the Confrontation Clause under *Inadi, supra,* while similar statements, when offered for the fact of their utterance, have been found outside the clause's scope.

showing of unavailability is essential to the introduction of out-of-court statements offered for a nonhearsay purpose.

## II.

Applying the foregoing principles to the out-of-court statements at issue in this case, I conclude that no Confrontation Clause violation has been shown. In an opinion delivered from the bench after the close of trial, I explained my reasons for finding that Mr. Maleno was guilty, and also explained the evidence on which I relied in reaching that finding. *See* Tr. 758–61 (July 15, 1983). The discussion in the bench opinion makes clear that the substantive evidence on which, as fact-finder, I relied chiefly consisted of the tapes of forty-four conversations in which Mr. Maleno was a participant. The bench opinion refers to the many conversations in which Mr. Maleno participated, *id.* at 758, and in which "the matter under discussion is the distribution of methamphetamine." *Id.* at 760.

The terms used in those conversations were not always self-defining. Phrases meaning one thing to a lay auditor may mean something very different when used among persons trafficking in metamphetamine. *See id.* at 769–777 (discussing, *inter alia*, specialized meaning given the terms "guys"—used to refer to pieces of methamphetamine—and "wetness"—used to describe the condition of the drug). As a result, I relied in part on certain evidence extrinsic to the conversations themselves to interpret the terms used therein. In Mr. Maleno's case, the bench opinion expressly notes that the testimony of Agent Hershowitz was important in "giving content to conversations, a great many of which were ... ambiguous to the lay auditor." *Id.* at 760. Agent Hershowitz was of course available for cross-examination at trial; the use of his testimony therefore raises no Confrontation Clause problems.

In addition to the testimony of Agent Hershowitz, I mentioned one other source of evidence for the meaning of ambiguous conversations: others of the taped conversations in which the ambiguous terms are more clearly used to refer to the business of methamphetamine distribution. *Id.* at 763–778. Often, these other conversations were used to clarify discussions involving different parties, so that roughly contemporaneous conversations involving A and B might be used to help clarify conversations between A and C. Moreover, it is undisputed that participants in some of the conversations were not subject to cross-examination at trial, since they were not called to testify. This is the basis for Mr. Maleno's claim under the Confrontation Clause.

At the outset, it is unclear whether any use was made as to Mr. Maleno of conversations in which Mr. Maleno did not participate. Mr. Maleno was tried together with four codefendants; the portions of my July 1983 bench opinion in which I expressly discuss my use of certain conversations against nonparticipants involve other defendants, not Mr. Maleno. *Id.* (explaining reasons for convictions of defendants Dominic Florio, Ralph Pultrone, and John DiSalvo). Mr. Maleno's Confrontation Clause claim is therefore necessarily difficult to pin down, because it rests not on a particular statement or set of statements but on the whole range of conversations in which he did not participate.[5] The bench opinion strongly suggests that none of the statements of which Mr. Maleno complains were used against him—that, instead, the "great many" conversations in which he participated decisively proved his guilt. *See id.* at 758–61. I am not willing, however, to reject Mr. Maleno's claim on the ground that out-of-court conversations of unavailable individuals were not used against him. My bench opinion does not purport to discuss my use of every item of evidence

---

**5.** Mr. Maleno's brief in support of his petition for a new trial does not refer me to any particular conversation whose use against him violated the Confrontation Clause, but rather complains that "[m]ost of the evidence in this case consist-

ed of tape recorded conversations between several co-conspirators," and that such conversations were "used as substantive evidence against [Mr. Maleno] resulting in his conviction." Petitioner's Brief at 1.

introduced during the course of a long trial. Nor am I prepared, on the basis of memory, to assert with confidence what I did or did not consider in reaching a criminal verdict some nineteen months ago. Accordingly, it seems only prudent to assume for purposes of deciding Mr. Maleno's petition for a new trial that conversations of absent co-conspirators were indeed used against Mr. Maleno, for the same purposes as against the other defendants.

■ As I have already indicated, those purposes were limited. The bench opinion contains an extended discussion of the proper evidentiary use of conversations in which a given defendant did not participate against that defendant. *Id.* at 763–78. I summarized my use of such conversations as follows:

The evidentiary use I have made of the conversations in which the charged person was not a participant was a use which did not involve relying on the recitals in those other conversations for the truth of what was recited, and thus the hearsay objection which otherwise would be proper is in my judgment obviate[d]; that is to say, those conversations to which persons other than the defendant who was charged by the Government to be a conspirator, were looked to not for the truth of what was asserted to locate the defendant in the conspiracy, but to place in context and give clarification to the meaning to be assigned to otherwise ambiguous conversations that the charged defendant ... was clearly a participant in.

*Id.* at 778. Statements of absent co-conspirators were, in short, used not for the truth of the assertions they contained but for the words and phrases they employed.[6] Such nonhearsay use of out-of-court statements does not violate the Confrontation Clause, regardless of the presence or absence of the out-of-court declarant. *See Collins v. Francis, supra,* 728 F.2d at 1336; *United States v. Peaden, supra,* 727 F.2d at 1500 & n. 11. The statements' limited use necessarily renders cross-examination of the absent declarants unhelpful, since the tapes establish the choice of words, and since the *truth* of the words was not at issue.

The unavailability requirement which *Inadi* reaffirmed and applied to the co-conspirator context does not apply to situations such as this one. The Third Circuit's analysis depends upon the proposition that the "broad co-conspirator exception to the hearsay rule" creates a "tremendous evidentiary advantage" for the government, because it permits the introduction of vast quantities of hearsay without a clear demonstration that such evidence is reliable. *See Inadi, supra,* 748 F.2d at 818–19. The statements at issue in this case were used for the fact of their utterance and not for their truth, so that there was no prosecutorial "advantage" to be counterbalanced.

---

6. Petitioner argues that this characterization is incorrect, relying on the fact that "the Court and Agent Hershowitz went to great lengths to 'interpret' many of the co-conspirator conversations." Petitioner's Brief at 2. Availability of the declarants for cross-examination was necessary, the argument goes, to permit the speakers to "explain their own ambiguous utterances rather than permit a government agent to speculate as to what was really meant." *Id.*

This argument confuses the evidentiary uses of (1) conversations in which Mr. Maleno participated and (2) conversations in which Mr. Maleno did not participate. It is clear that Mr. Maleno's words were indeed used as "substantive evidence" against him, and that I carefully considered Agent Hershowitz' extensive testimony in interpreting the sometimes ambiguous words which Mr. Maleno used. *See* Tr. 758–61 (July 15, 1983). It is equally clear that some conversations were used as evidence against parties who did not participate in those conversations. *Id.* at 763–78. The evidentiary value of these latter conversations was precisely their clarity—terms which elsewhere appeared vague were used in a context that left no doubt as to their meaning. *E.g., id.* at 772–74 (conversation between Anthony Orlando and Joseph Maleno used to clarify meaning of "wetness" as used in conversation between Joseph Maleno and John DiSalvo). Thus, it was unnecessary for me to "interpret" these conversations in order to use them against defendants who did not participate in them. To the contrary, they were used as interpretive tools with which to construe the critical "substantive evidence" against the various defendants—the defendants' own words in conversations with each other and with the other members of the conspiracy.

For these reasons, I find that Mr. Maleno has not shown a violation of the Confrontation Clause. The petition for a new trial will therefore be denied. An Order to that effect accompanies this Opinion.