Ralph BUSSARD *v.* STATE of Arkansas

CR 87-170                                    747 S.W.2d 71

Supreme Court of Arkansas
Opinion delivered March 21, 1988

*Larry Dean Kissee* and *Carmack Sullivan*, for appellant.

*Steve Clark*, Att'y Gen., by: *Joseph V. Svoboda*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The appellant, Ralph Bussard, was found guilty of capital murder and attempted capital murder. He argues six points for reversal. We find that the trial court erred in not suppressing a custodial statement and reverse and remand for a new trial.

Arthur Garner was murdered at the Motorport Motel near Hardy, Arkansas, which he and his wife, Florence Garner, operated. She testified that they were asleep in their bedroom on August 28, 1981, when someone rang the office doorbell at approximately 1:00 or 2:00 a.m. Her husband put on his trousers, got his gun, and went to the front office, which was directly in front of the bedroom. When he opened the door, one of the men pushed him into the bedroom. Because it was dark, Mrs. Garner could not identify any of the men, but she did see a shadow at the bedroom door and a shiny object pointed at her and Mr. Garner. Subsequently, a number of shots were fired which wounded Mrs. Garner and killed her husband, who was found lying facedown near the bedroom doorway.

On August 29, 1981, Bussard was taken into custody by the Springfield, Missouri, police while he was being treated for a gunshot wound at a local hospital. He was later convicted of an unrelated crime in Missouri and imprisoned there. On September 1, 1981, he was charged by Arkansas felony information with the murder of Arthur Garner. A detainer was placed upon him, and he was returned to Arkansas on July 9, 1982.

## I. CUSTODIAL STATEMENT

While imprisoned in Missouri, Bussard retained Mr. Charles LeCompte, an attorney, to defend him on the Arkansas charges. The record reflects that LeCompte participated in the initial stages of the Arkansas proceedings. On September 24,

1982, while he was incarcerated in the Sharp County Jail, Bussard requested to make a telephone call. He was taken to the private office of the sheriff, T.J. Powell. After Bussard had finished making his call, Powell initiated a conversation by asking Bussard if he was ready to talk about the crime. Bussard then signed a rights waiver form and a handwritten inculpatory statement prepared by Powell placing Bussard at the scene of the murder. Prior to trial, Bussard's present attorney, Larry Kissee, filed a motion to suppress the statement on the basis that it was taken in violation of the accused's fifth and sixth amendment rights. The trial court denied this motion. Bussard argues that this was prejudicial error. We agree.

The United States Supreme Court in *Edwards* v. *Arizona*, 451 U.S. 477 (1981), established the following "bright line" rule based upon the fifth amendment privilege against compelled self-incrimination: An accused in custody, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. *See also Smith* v. *Illinois*, 469 U.S. 91 (1984). We have followed *Edwards. Hughes* v. *State*, 289 Ark. 522, 712 S.W.2d 308 (1986); *Hendrickson* v. *State*, 285 Ark. 462, 688 S.W.2d 295 (1985); *Hickerson* v. *State*, 282 Ark. 217, 667 S.W.2d 654 (1984). The *Edwards* rule embodies two distinct inquiries. First, courts must determine whether the accused actually expressed his desire for or clearly asserted his right to counsel. *Smith* v. *Illinois, supra.* "Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only upon finding that he (a) initiated further discussions with police, and (b) knowingly and intelligently waived the right he had invoked." *Id.*

In *Michigan* v. *Jackson*, 475 U.S. 625 (1986), the Court applied *Edwards* in the sixth amendment context. In *Michigan* v. *Jackson*, respondent Jackson requested appointment of counsel at an arraignment. The next day, before Jackson had an opportunity to consult with his attorney, two police officers initiated a conversation with him to confirm that he was the person who shot the victim. After the officers read him his *Miranda* rights and he agreed to proceed without counsel, Jackson confessed. The Court,

in affirming the Michigan Supreme Court's suppression of the confession, held that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid."

After Bussard has been charged by felony information for the murder of Arthur Garner, he asserted his right to counsel by retaining Mr. LeCompte to defend him. Although Bussard did not claim this right at an arraignment or similar proceeding as in *Michigan* v. *Jackson*, we find the prophylactic rule of *Edwards* is equally applicable when an accused employs an attorney after formal charges have been brought against him, especially, as in this case, where the authorities were fully aware that the defendant was represented by counsel. The sixth amendment guarantees an accused, at least after the initiation of formal charges, the right to rely on counsel as a medium between himself and the state. *Michigan* v. *Jackson, supra.*

Inasmuch as the sheriff initiated communication or conversation with Bussard, Bussard's subsequent waiver was invalid and his confession inadmissible. We reverse and remand for a new trial.

## II. ISSUES ON REMAND

Since we are remanding this case, we will address issues that the appellant has raised and are likely to arise on retrial.

### A. PHYSICIAN-PATIENT PRIVILEGE

Bussard was admitted to a hospital in Springfield, Missouri, in the early morning hours of August 28, 1981, for a gunshot wound. In a surgical procedure, Dr. Ruff removed a bullet from Bussard's chest. This bullet was later identified at trial as having been fired from a pistol found under the body of Mr. Garner at the murder scene. Bussard contends that Dr. Ruff's testimony concerning the surgery and the bullet removed from his chest was inadmissible because of certain physician-patient privileges under Missouri statutes.

It is well settled that the admissibility of evidence is governed by the law of the forum state. *Brotherhood of R.R. Trainmen* v. *Long*, 186 Ark. 320, 53 S.W.2d 433 (1932); Leflar,

*Conflict of Laws*, § 177 (1938); Restatement of Conflicts of Law § 597 (1934). Thus, Arkansas, not Missouri, law applies. Ark. R. Evid. 503 provides in pertinent part as follows:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his physical, mental, or emotional condition . . . .

Since the doctor's testimony did not concern any communications made for the purpose of diagnosis or treatment of Bussard's physical, mental, or emotional condition, it is admissible on remand. *Baker v. State*, 276 Ark. 193, 637 S.W.2d 522 (1982).

## B. PHOTOGRAPHS

Bussard argues that the trial court erred in admitting into evidence three inflammatory photographs taken at the crime scene. The first photograph in question depicts a small portion of the head of the victim, who is lying near the bedroom doorway. The second photograph shows the victim in the same position with multiple gunshot wounds. The third photograph, which is very similar to the second, portrays the victim as well as the pistol which was found under the victim's body.

A trial court's decision to admit photographs will not be set aside absent a manifest abuse of discretion. *Fitzhugh v. State*, 293 Ark. 315, 737 S.W.2d 638 (1987). Inflammatory photographs are admissible if they tend to shed light on any issue, enable a witness to better describe the objects portrayed, permit the jury to better understand testimony, or corroborate testimony. *Watson v. State*, 290 Ark. 484, 720 S.W.2d 310 (1987). All three photographs corroborate the testimony as to the physical layout of the murder scene. Additionally, the third photograph corroborates the testimony concerning the location of the gun found under the victim's body. Accordingly, the trial court did not abuse its discretion by admitting the photographs into evidence.

## C. EVIDENCE OF PRIOR ACTS

Bussard contends that the trial court erred in allowing into evidence testimony of other alleged acts of misconduct in violation of Ark. R. Evid. 404(b). On direct examination, the

prosecutor asked witness Dorothy Hudson three times if Bussard had had a fight with an individual named "Baby Bob" the night before the murder. Hudson only answered the final question by stating, "I was told. . . ." Bussard's attorney objected on hearsay grounds. The trial court sustained the objection. Since no evidence of the fight was admitted into evidence, Bussard's contention has no merit.

■ Bussard further argues that the series of questions was highly prejudical and not relevant to the issues being tried. Since Bussard did not raise this issue below, we do not consider it. *Stephens* v. *State*, 293 Ark. 366, 738 S.W.2d 91 (1987).

### D. HEARSAY TESTIMONY

Bussard argues that the trial court prejudicially erred by admitting into evidence hearsay testimony. While attempting to lay a foundation for the introduction of photographs depicting a bloodstained automobile, the prosecutor questioned Sheriff Powell concerning his knowledge of the vehicle shown in the photograph. The defense's objection on the ground of improper authenticity was overruled, and the photographs were admitted into evidence. Powell then testified that he had personally observed the vehicle in Greene County, Missouri, on October 2, 1981, and that the photograph revealed blood under the backseat of the Bussard vehicle. The court sustained defense counsel's objection to Powell's testimony that the vehicle was Bussard's. Thereafter, the prosecutor asked Powell, "Did you or another officer who shared information with you determine that was the Bussard vehicle?" Defense counsel objected because the question called for a hearsay response. The court overruled the objection, and Powell answered, "Detective Ivan Johnson with the Greene County Sheriff's Department".

■ Powell's testimony was hearsay and inadmissible. However, in this instance, any prejudice that may have resulted was cured by the subsequent testimony of Detective Johnson. Johnson identified the vehicle in the photographs in question as the one which Bussard had permitted him to search pursuant to a written waiver admitted into evidence in which Bussard stated that the vehicle belonged to him.

## III. DISCOVERY

Bussard complains of the state's non-compliance with our rules of discovery. The issue may not arise again on retrial, but it is nevertheless of such concern that we find it necessary to comment.

Early in the proceedings, Bussard filed a motion requesting disclosure by the state of materials subject to discovery pursuant to Ark. R. Crim. P. 17.1. The state made partial disclosures, noting in part, that physical evidence could be inspected in the Sharp County Sheriff's Office and that photographs would be subject to viewing by contacting a state police investigator in Walnut Ridge (Lawrence County). Apparently this response proved unsatisfactory as Bussard filed another motion under Rule 17.1 asking for disclosure of specific materials and information, to which the state did not respond.

During the course of pretrial proceedings, Bussard's attorney advised the court:

> Judge, there's been absolutely no discovery made in this case at all. I've had to go to the Court files and gather everything I can.

The prosecutor responded:

> Well, it's all in there. I mean, we've made discovery in the past, Your Honor, in reply to—I can see why that's kind of a little odd, but we've had two different cases. We've had a jury trial in connection with Moss and every witness known to the State is listed in the Court files.

In reviewing the record, we surmise that the prosecutor is saying that the court files in the case of Moss, who was earlier tried and convicted in the same crime, contain all of the information and exhibits of the state's case against Bussard, and that all disclosable materials are in the court files to which the appellant has access (it is admitted by the state that portions of the Moss file are a matter of trial records which are on file in this court). Referring the appellant's attorney to other files relating to the state's case against the appellant, which were located in various places, may be slightly akin to what is sometimes referred to as an open file policy. Even so, we have not given carte blanche

approval of an open file policy as an acceptable substitute for disclosure. Merely because the prosecutor declares that the files in the case are open, it cannot be taken to mean that he has fulfilled his discovery obligations. *See Earl* v. *State*, 272 Ark. 5, 612 S.W.2d 98 (1981). As so aptly stated by the court of appeals in *Dever* v. *State*, 14 Ark. App. 107, 685 S.W.2d 518 (1985), "Arkansas Rules of Criminal Procedure, Rules 17.1 through 17.3, provide that the prosecution shall cooperate with the defense counsel and provide all discoverable material to the defense. Rule 17.3 requires the prosecutor to obtain any information held by other governmental agencies and provide it to the defense." As in *Dever*, the prosecutor's actions in this case fall woefully short of what is required by the rules of discovery. Since we reverse this case on other grounds, it is not necessary for us to decide whether the prosecutor's failure to comply with the rules of discovery would also require reversal.

Reversed and remanded.

HICKMAN, HAYS, and GLAZE, JJ., dissent.

STEELE HAYS, Justice, dissenting. In *Edwards* v. *Arizona*, 451 U.S. 477 (1981), the Supreme Court adopted the bright-line principle that an accused who has invoked his right to have counsel present during custodial investigation, or has expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities unless the accused himself initiates further conversations with the police. That rule, though well settled, has little relevancy to this case, however, because there is no proof the appellant ever invoked either his right to remain silent or his right to have counsel present before being questioned. In fact the appellant did not even testify at the suppression hearing, nor, for that matter, at trial.

The only witness at the suppression hearing was Sheriff Powell, and while he was aware that Mr. Charles LeCompte, a Springfield, Missouri, attorney, represented appellant, there was no proof that Mr. LeCompte ever had communicated with Sheriff Powell, or instructed him not to speak to appellant except through him. Thus, if appellant's contention that his 5th and 6th amendment rights were violated is to prevail, it must be on the strength of *Michigan* v. *Jackson*, 475 U.S. 625, 106 S. Ct. 1404 (1986). The two cases are clearly distinguishable. In *Jackson*, the

accused expressly requested the appointment of counsel at his arraignment on a murder charge, which was attended by the police officers involved in the investigation. Notwithstanding that explicit request, two police officers visited the accused the next morning at the jail and, after explaining his Miranda rights, obtained a confession from him. The accused was not told that counsel had been appointed, although he had inquired several times since his arraignment. On these facts the Michigan Supreme Court concluded that the *Edwards* rule applies by analogy to those situations where the accused requests counsel *before the arraigning magistrate.* " 'The police cannot simply ignore a defendant's unequivocal request for counsel.' " *Michigan* v. *Jackson, supra,* citing *People* v. *Bladel,* 421 Mich. 39, 66-67, 365 N.W.2d 56, 69 (1984). The United States Supreme Court affirmed.

I have no quarrel with the decision in *Michigan* v. *Jackson,* but I think it is a mistake to extend it beyond its own facts and especially to the facts in this case. There is not the slightest indication that appellant had requested the appointment of counsel at arraignment, either here or in Missouri, or, for that matter how Mr. LeCompte came to represent him. Nor, as I have noted, is there any evidence that appellant informed anyone that he wanted to communicate only through LeCompte. The fact is Mr. LeCompte's status in the case is something of a mystery. He was shown as receiving several information copies of filings by the state, and he approved a joint order dealing with trial scheduling, but he filed no motions and, significantly, never entered his appearance on behalf of the appellant nor was he even shown to be counsel of record. Yet, on that very ambiguous status the majority holds that *Michigan* v. *Jackson* prevents appellant from being asked in what seems to have been a thoroughly casual way if he wanted to discuss the case. I suggest that today's decision will prove a boon to those who have easy access to the criminal defense bar but of little help to those who are dependent on court appointed counsel. 1 La Fave, Criminal Procedure, § 6.4(e) (1984). And *see Moran* v. *Burbine,* 475 U.S. 412, 106 S. Ct. 1135 (1986), holding that 6th amendment right to counsel attaches at the time formal charges are initiated and not by virtue of an existing attorney-client relationship. "[A]s a practical matter it makes little sense to say that the Sixth Amendment right to

counsel attaches at different times depending on the fortuity of whether the suspect or his family happens to have retained counsel prior to interrogation." *Id.*

There is another, equally compelling reason to affirm. Even if the admission of the statement could somehow be regarded as error, it is clear there was no prejudice in this case. Appellant's statement simply admitted he was with John Moss and R.B. Smith[1] at the time of the robbery. But that fact was wholly undisputed. The defense called no witnesses. Appellant's sister testified, with obvious reluctance, that immediately after the robbery Moss and Smith brought her brother to the trailer; that Smith was driving her brother's car, and both Moss and appellant were badly wounded. She nursed appellant until a rescue unit arrived to remove him to a Springfield, Missouri, hospital. Lucille Day and Bobby Day testified that appellant, John Moss and R.B. Smith were together on August 28, 1981, just before the robbery. They said the three men were in appellant's car. Photographs of blood stains in appellant's car were also introduced. A physician and a nurse from the Springfield hospital testified to having surgically removed a lead cartridge from appellant on August 30, 1981. The cartridge was shown to have come from the pistol the victim was using at the time of the robbery. Thus, the admission of a statement by appellant that he was with Moss and Smith at the time of the robbery in the face of proof which can only be characterized as overwhelming and undisputed, was plainly harmless. We have said that where the proof of guilt is overwhelming, the requirement of prejudicial error increases accordingly. *Novak* v. *State*, 287 Ark. 271, 698 S.W.2d 499 (1985). *Berna* v. *State*, 282 Ark. 563, 670 S.W.2d 434 (1984) *cert. denied*, 470 U.S. 1085 (1985). Even constitutional errors may be cured where proof of guilt is so convincing that it can be said the error is harmless beyond a reasonable doubt. *Harrington* v. *California*, 395 U.S. 250 (1969); *Snell* v. *State*, 290 Ark. 503, 721 S.W.2d 628 (1986).

The trial court should be affirmed.

HICKMAN, J., joins this dissent.

---

[1] Moss and Smith had been previously convicted of the crime.