Ralph BUSSARD *v.* STATE of Arkansas

CR 88-64                                            759 S.W.2d 24

Supreme Court of Arkansas
Opinion delivered October 24, 1988

*Larry Dean Kissee*, for appellant.

*Steve Clark*, Att'y Gen., by: *David B. Eberhard*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. This case arises from the events of August 28, 1981, when three men attempted to rob the Motorport Motel at Hardy, Arkansas, and in a shoot-out the motel proprietor was killed and his wife was wounded. Appellant was charged along with John Moss and R.B. Smith with murder and attempted murder. While awaiting trial, appellant disappeared from the Sharp County jail on December 16, 1982. That same night a Pontiac automobile was stolen from a parking lot near the jail. Appellant was promptly charged with escape and theft of property.

Appellant remained at large for almost four years, until September 9, 1986, when he was arrested in California where he had been living under an assumed name. He waived extradition and was returned to Arkansas on September 30, 1986. On the following day appellant gave a statement admitting the escape and auto theft. Appellant was tried and, as a habitual offender, sentenced to twelve years for escape and twenty years for theft. On appeal, he contends, first, that his confession should have been suppressed and, second, that evidence of other acts of misconduct should have been excluded. We are not persuaded by the arguments.

## I

At a suppression hearing Sheriff T.J. Powell testified that at 9:35 a.m. on October 1, 1986, he read the Miranda warnings to appellant, who understood them and, without urging, gave a statement with respect to the escape and theft charges, but not to the murder and attempted murder charges. Appellant declined to discuss the murder charges until he had consulted with a lawyer. Appellant said he was able to escape when his cell door failed to close fully. He first thought he was being "set-up" to be shot trying to escape, but after several hours, when a guard answered a disturbance in another area, he left the jail, found a car at a Wal-Mart parking lot with keys in the ignition and drove to Spring-field, Missouri, where the car was abandoned. From there he worked his way to California.

Sheriff Powell testified that in 1982, sometime after appellant's escape, he called attorney Charles LeCompte of Spring-field, who had earlier represented appellant on the murder charges, and learned that LeCompte no longer represented appellant. The sheriff testified that he had no knowledge of anyone being appointed to represent appellant. The sheriff and his chief deputy both testified that appellant gave his statement freely and their testimony was not refuted by appellant, who did not testify at the suppression hearing.

Appellant contends however, that LeCompte was still his attorney and as he had been formally charged the trial court erred in refusing to suppress his statement. Appellant makes this claim based on his 6th Amendment right to be immune from police interrogation once a critical stage has been reached and counsel has been retained or requested. *Michigan* v. *Jackson*, 475 U.S. 625 (1986); *Bussard* v. *State*, 295 Ark. 72, 747 S.W.2d 71 (1988).

Those principles of law were considered and applied in a case involving this same appellant, *Bussard* v. *State, supra*, but upon factually distinguishable grounds. There, this court held that a statement given by appellant to the effect that he was with the other co-defendants, John Moss and R.B. Smith, at the time of the robbery should not have been admitted in the murder trial because the appellant's 6th Amendment right to counsel had been invoked and the statement came, not at the instigation of the

appellant, but of the sheriff. *Bussard* at 75. However, the statement at issue in that case occurred on *September 24, 1982*, four years earlier, and a number of circumstances had changed during the interim. For one thing, Sheriff Powell was aware in 1982 that appellant was represented by counsel when he asked him if he "was ready to talk about the crime." In the present situation Sheriff Powell testified without contradiction that after the escape in December 1982, he contacted Mr. LeCompte and was told LeCompte no longer represented appellant and that when he questioned appellant on the morning of October 1, 1986, he had no reason to believe that appellant had a lawyer. Nor is there anything in the record to suggest that appellant asked for an attorney when the Miranda warnings were undisputedly given to him on the morning of October 1, 1986.

Secondly, appellant was at liberty for those intervening months between December 16, 1982, and September 9, 1986, and, hence, free of the coercive environment of custodial detention, a circumstance which has been recognized as material and relevant to a determination of how long the right to counsel, once having attached, endures. The underlying rationale of *Edwards* v. *Arizona*, 451 U.S. 477 (1980), is that when an accused claims his right to counsel the implicit premise is that he considers himself incapable of withstanding the pressures of custodial interrogation without legal assistance. In *Arizona* v. *Roberson*, ___ U.S. ___, 108 S. Ct. 2093 (1988), the Supreme Court refused to craft an exception to *Edwards* v. *Arizona*, where the accused is reinterrogated about unrelated crimes after the right to counsel has attached, the court noting that the accused was in continuous custody from the time he asserted his right through the impermissible questioning and was never free of the coercive environment. It was inherently compelling pressures "created by *prolonged police custody*" (our emphasis) that necessitated the rule. *Roberson*, at 3000.

No such problems exist in the case at bar. Appellant makes no contention that his statement was coerced in any fashion. The officers testified that he discussed the escape and theft freely and the statement itself, which was taped and transcribed, readily attests to that conclusion. As we have said, appellant did not challenge that proof by the state. Appellant was plainly not concerned about the escape and theft charges. He was concerned,

understandably, with the murder and attempted murder charges and with whether, with the help of counsel, he might negotiate for a life sentence with the possibility of parole. Having made it clear he would not discuss them, no attempt was made at the October 1 interview to interrogate appellant on those charges.

■ We are not overlooking appellant's proof at the suppression hearing. He introduced a letter from the circuit clerk to his present counsel, Mr. Larry Dean Kissee, informing him that he had been appointed to defend appellant on all the pending charges. It was stipulated that the letter was mailed at 4:30 p.m. on October 1, 1986. Appellant also introduced a letter from the circuit clerk dated November 6, 1986, to Mr. LeCompte informing him that he was still shown as representing appellant, and mentioning the appointment of Mr. Kissee. We attach no great significance to the LeCompte letter in view of the uncontradicted testimony of the sheriff that Mr. LeCompte had earlier stated he no longer represented appellant. Indeed, in appellant's statement to Sheriff Powell he candidly acknowledges that he no longer regarded Mr. LeCompte as representing him.

■ Nor does the letter to Mr. Kissee, admittedly mailed after appellant was interrogated earlier in the day and not received until October 2, mandate a different result. Examining the issue of appellant's statement from a totality of the circumstances, we conclude appellant's right to counsel had not been invoked at the time he gave his statement.

## II

■ The remaining contention deals with information presented to the jury during the state's direct examination of Sheriff Powell. The sheriff was asked if, at the time of his escape, appellant was "duly and legally in your jail on charges of capital murder and attempted capital murder?" The defense objected and the court overruled the objection, with the comment, "He's got to bring it up because it's an element of the crime of escape." Appellant cites only A.R.E. Rule 404(b) and *Alford* v. *State*, 223 Ark. 330, 266 S.W.2d 804 (1954), which have no real bearing on the issue presented here, which is, is it error to permit proof that an accused is charged with capital murder and attempted capital murder as an element of escape. Or, is it enough in proving the elements of escape simply to show that an accused is lawfully in

custody, without disclosing the specific crime with which he is charged. We find nothing in Ark. Stat. Ann. § 41-2811 (Repl. 1977) (second degree escape) with which appellant was charged, or AMCI 2811, by which the jury was instructed, suggesting that proof of the specific crime is an element of escape, only that, in this case, the accused has escaped from a correctional facility. However, we note that the jury had been told more than once during the opening statement of the prosecutor that appellant was awaiting trial on the charge of capital murder and attempted capital murder. There was no objection to these remarks and the testimony was merely cumulative. *Young* v. *State*, 283 Ark. 435, 678 S.W.2d 329 (1984).

Affirmed.

PURTLE, J., DUDLEY, J., and NEWBERN, J., dissent.

JOHN I. PURTLE, Justice, dissenting. From the majority opinion it is clear that the sheriff questioned the appellant at 9:35 a.m. on October 1, 1986. It is also clear that at that same time the appellant refused to discuss the pending murder charge without a lawyer. Nevertheless, the sheriff, after reading the appellant the Miranda warnings, and learning that appellant wanted to speak to his lawyer on the murder charge, questioned the appellant about the escape and auto theft.

Later the same day, October 1, 1986, a letter was mailed notifying Larry Kissee that he had been appointed to defend the appellant. The record reveals that Charles LeCompte represented the appellant on the charge for which he was being held when he escaped. The court clerk wrote LeCompte, on November 6, 1986, that he was still shown as the attorney of record for the appellant.

The state justifies the sheriff's action by stating that LeCompte had personally told the sheriff, in a private conversation, that he no longer represented the appellant. Someone should have told the appellant that he did not have an attorney especially since he contends that LeCompte still represented him. If the sheriff was told by the lawyer that he no longer represented the appellant, the least the sheriff should have been required to do was inform the accused that he no longer was represented by the attorney.

I dissent because I believe that the Constitution, as interpreted in *Arizona v. Roberson*, ___ U.S. ___, 108 S. Ct. 2093 (1988), requires the suspension of questioning of an accused upon learning that he wants a lawyer to represent him, even on a separate charge.

DAVID NEWBERN, Justice, dissenting. The majority opinion correctly states the underlying rationale and holding of *Arizona v. Roberson*, ___ U.S. ___, 108 S. Ct. 2093 (1988). The State of Arizona contended that *Edwards v. Arizona*, 451 U.S. 477 (1981), need not be applied where the questioning of an accused with respect to a separate investigation yields information relevant to an investigation in which he had requested counsel. Mr. Justice Stevens, writing for the majority responded as follows:

> It is by no means clear, though, that police engaged in separate investigations will be any less eager than police involved in only one inquiry to question a suspect in custody. Further, to a suspect who has indicated his inability to cope with the pressures of custodial interrogation by requesting counsel, any further interrogation without counsel having been provided will surely exacerbate whatever compulsion to speak the suspect may be feeling. [108 S.Ct. at 2100]

The majority opinion, however, uses the remainder of Mr. Justice Stevens's response on the point to distinguish *Arizona v. Roberson* from the case before us. Mr. Justice Stevens's remarks continued as follows:

> Thus, we also disagree with petitioner's contention that fresh sets of *Miranda* warnings will "reassure" a suspect who has been denied the counsel he has clearly requested that his rights have remained untrammeled. . . . Especially in a case such as this, in which a period of three days elapsed between the unsatisfied request for counsel and the interrogation about a second offense, there is a serious risk that the mere repetition of the *Miranda* warnings would not overcome the presumption of coercion that is created by prolonged police custody. [108 S. Ct. at 2100, footnote omitted].

It seems to me that our majority opinion has taken the words

"created by prolonged police custody" which, as shown above, were used by Mr. Justice Stevens to illustrate a point collateral to the holding of *Arizona* v. *Roberson*, and used them to avoid the very holding of the case from which they were excerpted.

I disagree with the majority opinion's seeming conclusion that, because the sheriff knew or thought Bussard was no longer represented by his first lawyer, he could question Bussard without the presence of counsel. The point is not whether, as the majority opinion suggests, the sheriff "had no reason to believe that appellant had a lawyer." Rather, the point is, as expressed quite clearly in *Arizona* v. *Roberson*, whether he had invoked his right to counsel. Obviously the sheriff knew that, and the lack of "prolonged police custody" is irrelevant.

This decision is inconsistent with *Edwards* v. *Arizona*, *supra*, *Arizona* v. *Roberson*, *supra*, and our own earlier decision with respect to this same appellant, *Bussard* v. *State*, 295 Ark. 72, 747 S.W.2d 71 (1988).

I respectfully dissent.

DUDLEY, J., joins in this dissent.