UNITED STATES, Appellee

v.

Patrick A. GROOTERS, Specialist
U.S. Army, Appellant.

No. 68,443.
CMR No. 9001466.

U.S. Court of Military Appeals.

Argued Nov. 9, 1993.
Decided June 8, 1994.

pretrial statements. U.S.C.A. Const. Amends. 5, 6; Military Rules of Evid., Rule 804(b)(3).

For Appellant: *Captain Teresa L. Norris* (argued); *Colonel Malcolm H. Squires, Jr., Lieutenant Colonel James H. Weise* and *Major Fran W. Walterhouse* (on brief); *Colonel Stephen D. Smith* and *Captain Timothy M. Lawlor.*

For Appellee: *Captain John G. Giovannelli* (argued); *Colonel Dayton M. Cramer, Major James L. Pohl, Major Joseph C. Swetnam* (on brief); *Major Donna M. Bartlett.*

*Opinion of the Court*

GIERKE, Judge:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of attempted murder, in violation of Article 80, Uniform Code of Military Justice, 10 USC § 880. He was acquitted of charges of aggravated arson and larceny, in violation of Articles 126 and 121, UCMJ, 10 USC §§ 926 and 921, respectively. Appellant was sentenced to a bad-conduct discharge, confinement for 4 years, total forfeitures, and reduction to Private E–1. The convening authority approved the sentence except for confinement exceeding 36 months. The Court of Military Review affirmed the approved findings and sentence. 35 MJ 659 (1992). We granted review of the following issues: *

I

.WHETHER THE ARMY COURT ERRED AS A MATTER OF LAW IN FINDING THAT ADMISSION OF APPELLANT'S CONFESSION TAKEN IN

---

* We have resolved the granted issue concerning the Appointments Clause in favor of the Government. *See United States v. Weiss*, 36 MJ 224 (1992), *aff'd,* — U.S. —, 114 S.Ct. 752, 127 L.Ed.2d 1 (Jan. 19, 1994).

VIOLATION OF HIS FIFTH AMENDMENT RIGHTS TO REMAIN SILENT AND TO HAVE AN ATTORNEY PRESENT DURING QUESTIONING AND ADMISSION OF MR. HENRY'S SWORN STATEMENTS IN VIOLATION OF APPELLANT'S SIXTH AMENDMENT RIGHT TO CONFRONT THE WITNESSES AGAINST HIM WAS HARMLESS ERROR BEYOND A REASONABLE DOUBT.

II

WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR IN INSTRUCTING THE PANEL MEMBERS DURING INSTRUCTIONS ON FINDINGS THAT APPELLANT COULD BE CONVICTED OF ATTEMPTED *UNPREMEDITATED* MURDER WHICH REQUIRES EITHER AN INTENT TO KILL OR INFLICT GREAT BODILY HARM.

III

WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR IN INCORPORATING BY REFERENCE PRELIMINARY INSTRUCTIONS GIVEN IN PREVIOUS COURTS–MARTIAL.

The theory of the prosecution in this case was as follows: appellant and Private Maruca spent the evening of July 28, 1989, at a German night club celebrating Maruca's birthday. At the club they met Mr. Henry, an American civilian, who invited them to his apartment. After further drinking at the apartment, appellant and Maruca fell asleep in the living room. During the night appellant turned away a "homosexual advance" by Henry by pretending to be asleep. Shortly thereafter, appellant watched Henry and Maruca engage in oral and anal sodomy. Appellant was enraged by Henry's homosexual advances, believed that Maruca was the victim of homosexual rape, and decided to kill Henry by setting his apartment on fire while Henry was asleep on the floor. Henry was able to put the fire out. *See* 35 MJ at 660.

The prosecution's case consisted of Maruca's testimony, two pretrial statements by appellant, two pretrial statements by Henry, and expert testimony regarding physical evidence from the apartment. The defense case consisted of appellant's testimony and evidence attacking Henry's veracity.

Private Maruca testified about his birthday celebration at the night club with appellant, where they met Henry. Maruca testified that he was "pretty intoxicated" and "out of it." He did not remember leaving the club. He could not remember what happened during the night except "throwing up and pushing somebody off of me." He had no memory of appellant's awakening him. When he awakened, he saw Henry asleep on the floor with a bottle of charcoal lighter fluid in his hand. Maruca testified that appellant was "angry." Appellant called Henry a "fag," and said, "He was going to kill the motherfucker." Appellant also said that Henry "probably" intended to kill them. Maruca testified that when he awakened, he noticed that the side of the sofa where he had slept was wet and that the wet area felt and smelled like charcoal lighter fluid. As they departed the apartment, with Henry still asleep on the floor, Maruca saw appellant touch a butane cigarette lighter to a quilt or blanket on the sofa.

On cross-examination, Private Maruca testified that he was not sure about the smell of lighter fluid but that he concluded that the wetness on the sofa was lighter fluid when he saw the bottle in Henry's hand. When pressed about what appellant said, Maruca testified that he was "pretty sure" that appellant used the words, "Kill the motherfucker." He saw no flame as he and appellant departed the apartment, only smoldering.

Shortly after leaving Henry's apartment, Maruca gave a statement to agents of the Criminal Investigation Command (CID). He testified that he did not mention the fire in his first statement to criminal investigators because he "was scared."

The prosecution presented the testimony of a chemist who analyzed fabric from Henry's sofa. The chemist found no evidence of

an accelerant. He testified that an accelerant such as lighter fluid would have produced an immediate flame. He explained that the passage of time and exposure to the elements could have allowed any accelerant to evaporate.

A fingerprint examiner testified that two latent fingerprints on the lighter fluid bottle were analyzed but that they were not appellant's. There were other prints on the bottle but they were not suitable for analysis.

CID Special Agent (SA) Lopez testified that he interviewed Mr. Henry on August 29, 1989. In his written and sworn statement Henry denied the allegation of forcible sodomy but admitted engaging in consensual sodomy with Maruca. He stated that he fell asleep on the floor and awakened on the morning of July 29 to find his sofa on fire. He extinguished the fire and noted that a previously full can of charcoal lighter fluid was partially empty and that his wallet was missing. He said he found it several days later. He reported the fire damage to his landlord but did not report the fire and theft to the police because he was embarrassed by his homosexual activity. Mr. Henry gave a second statement to SA Lopez on the same day to clarify the extent of his intoxication and to clarify that he found the remains of his wallet on July 31.

Mr. Henry departed Germany after giving his statements to SA Lopez, was later located in Saudi Arabia, but refused to accept invitational travel orders to return to Germany for appellant's court-martial. The parties stipulated that there was "no subpoena authority" to compel Mr. Henry to return. Over defense objection, Mr. Henry's two sworn statements were admitted in evidence as statements against interest under Mil. R.Evid. 804(b)(3), Manual for Courts–Martial, United States, 1984.

SA Grass testified that on the morning of July 29, he questioned appellant in connection with a forcible sodomy complaint. He advised appellant that he was suspected of misprision of a serious offense. Appellant waived his rights and provided a statement. In his statement appellant asserted that Henry made a homosexual advance on him

during the night but that he brushed it off by pretending to be asleep. Appellant then saw oral and anal intercourse between Henry and Maruca, but he was afraid to stop it. Appellant did not mention the fire or any retributive actions against Henry.

On August 8, SA Grass called appellant back for a second interview, advised him again that he was suspected of misprision of a serious offense and that he intended to "ask him why he withheld information the first time when I talked to him." Appellant told SA Grass that he wanted "to consult with an attorney and did not want to be questioned any further." SA Grass "terminated the interview" and released appellant "back to his unit."

On August 30, 1989, after Mr. Henry had provided his two statements to the CID, SA Williams interviewed appellant. SA Williams advised appellant that he was suspected of aggravated arson, attempted murder, and larceny. SA Williams asked appellant "if he had been interviewed or advised of his rights about the matter in the past," and apparently received a negative reply. Appellant agreed to provide a statement and signed a written "rights waiver/non-waiver certificate" which included the comment, "I have not been advised of my legal rights regarding the above offenses." SA Williams did not ask the more general question whether appellant had been advised of his rights for any offense because of "oversight." He had access to the written record of appellant's invocation of rights on August 8, which was in the investigative file, but he was not aware of it at the time of the interview.

In his August 30 statement, appellant said that his statement of July 28 "was completely true with the exception of one detail." That detail was, "I did set a flame to the end of, a small flame, the man's bed or sofa whatever it was, prior to leaving his apartment." Appellant explained his motive: "After Maruca had said that he had been raped, I had hostile feelings and wanted to somehow pay the man back for what he had done to my friend. I stated to Maruca that I wanted to somehow pay this man back, having seen the cigarette lighter and not wanting to physical-

ly hurt the guy, I decided that ruining a piece of his personal property would be a good solution." Appellant denied using an accelerant for the fire and denied intending to kill Henry.

Defense counsel made a timely motion to suppress appellant's statement of August 30. The military judge denied the motion.

At trial appellant testified in his behalf and repeated what he had said in his August 30 statement to the CID. He again asserted that he "wanted to pay this guy back." He initially picked up a money clip full of money but put it back. He testified that "I was thinking about just leaving and I said, this guy, you know, he just can't get away scot free like this for what he has done." Appellant saw a cigarette lighter, "and I took it and I held it to the edge of the bed and we left." He denied using any lighter fluid. When asked if he tried to kill Henry, he replied, "I absolutely did not."

Appellant was cross-examined at length about his alleged fear of harm from Mr. Henry, a "middle aged man, who was nowhere near your size." He was asked to explain whether he literally meant his words, "I'm going to kill the mother-fucker." Trial counsel challenged the accuracy of his statement to SA Grass describing the oral and anal intercourse. Appellant responded that he let SA Grass write down anal intercourse "because that is what he wanted to believe," even though it may have been false. Trial counsel questioned him in detail about the bottle of charcoal lighter fluid. Appellant admitted making a false statement to SA Williams by initially denying that he knew anything about a fire. He denied telling SA Williams that the bed sheet was "on fire" when they left the apartment, even though the words appear in his written statement. When pressed about the discrepancy, he responded, "CID agents have a way of misconstruing things that you say." On one occasion he accused trial counsel of "put[ting] words in my mouth." On another occasion he responded to a question by asking, "Didn't I tell you before that I don't remember?" Finally, the military judge cautioned appel-

lant, "I don't want you spar[r]ing here with counsel. Just answer his questions."

The Court of Military Review held that the military judge erred by admitting Mr. Henry's two pretrial statements as statements against interest under Mil.R.Evid. 804(b)(3). That court stated that Mr. Henry's "statements do not reflect that Mr. Henry believed he was subjecting himself to any civil or criminal liability." The court further stated that "there was no evidence presented that Mr. Henry's homosexual conduct violated German law or would have adversely affected his employment or other propriety interests." 35 MJ at 663.

The Court of Military Review also held that appellant's August 30 statement should have been suppressed. Based on appellant's invocation of rights on August 8, the court held that the CID's reinitiation of interrogation was improper. *Id.* at 662.

The court below further held that the errors were harmless beyond a reasonable doubt. *Id.* at 663–64. The Judge Advocate General has not certified the question whether the Court of Military Review correctly held that the evidence should have been suppressed. All that is before us is appellant's challenge to the Court of Military Review's holding that the errors were harmless beyond a reasonable doubt. In this regard Article 67(c), UCMJ, 10 USC § 867(c) (1989), provides as follows:

> In any case reviewed by it, the Court of Military Appeals may act only with respect to the findings and sentence as approved by the convening authority and as affirmed or set aside as incorrect in law by the Court of Military Review. In a case which the Judge Advocate General orders sent to the Court of Military Appeals, that action need be taken only with respect to the issues raised by him. In a case reviewed upon petition of the accused, that action need be taken only with respect to issues specified in the grant of review....

Since the correctness of the ruling by the Court of Military Review as to admissibility of the statements has not been challenged either by petition of appellant or certification by the Judge Advocate General, we will treat

it as the law of this case. *See United States v. Sales,* 22 MJ 305, 307 (CMA 1986) (unchallenged ruling by Court of Military Review "constitutes the law of the case and binds the parties"). *See also Morris v. American National Can Corporation,* 988 F.2d 50, 52 (8th Cir.1993) (law of the case applies as result of waiver when party fails to raise issue on appeal).

■ We hold that the errors set out in the first granted issue in this case were not harmless beyond a reasonable doubt. The Court of Military Review found that Mr. Henry's two statements and appellant's statement of August 30 were "cumulative of other evidence presented at trial." 35 MJ at 663. The court below held that the only disputed issue was whether appellant intended to kill Mr. Henry and that the challenged statements merely reaffirmed appellant's denial of intent to kill. *Id.* at 663–64.

We disagree with the Court of Military Review's assessment of prejudice. In the first place, without the challenged evidence, the only evidence that appellant started the fire, that an accelerant was used, and that appellant expressed an intent to "kill the mother-fucker" would have been Maruca's uncertain, backpedaling testimony. The entire prosecution case would have rested on the testimony of Maruca, who readily admitted that his ability to observe was obscured by his extreme intoxication. Secondly, we are not convinced that the defense strategy would have been the same, because appellant might not have been compelled to testify in an effort to explain his pretrial statement. *See Harris v. United States,* 392 U.S. 219, 223, 88 S.Ct. 2008, 2010, 20 L.Ed.2d 1047 (1968) (in-court testimony to overcome illegally obtained confessions is "tainted by the same illegality that rendered the confessions themselves inadmissible"); *United States v. Bearchild,* 17 USCMA 598, 602, 38 CMR 396, 400 (1968) (accused's in-court testimony tainted if given to overcome inadmissible confession). Appellant's credibility was critical and may well have been damaged during cross-examination. It is not insignificant that appellant on cross-examination was forced to admit lying to SA Williams; resorted to accusing the CID of putting words in the statement which went beyond his oral answers; equivocated about whether anything was on fire when he and Maruca left the apartment; accused trial counsel of putting words in his mouth; and was cautioned by the military judge in the presence of the court members to stop sparring with counsel.

■ The Government has the "burden of demonstrating that the admission of the ... [evidence in question] did not contribute to" appellant's conviction. *Arizona v. Fulminante,* 499 U.S. 279, 296, 111 S.Ct. 1246, 1257, 113 L.Ed.2d 302 (1991); *accord Yates v. Evatt,* 500 U.S. 391, 403, 111 S.Ct. 1884, 1892–93, 114 L.Ed.2d 432 (1991). Since the Government has the burden of showing that a constitutional error was harmless beyond a reasonable doubt, it must exclude the "reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230–31, 11 L.Ed.2d 171 (1963).

In view of our disposition of the first granted issue, we need not address the remaining issues.

The decision of the United States Army Court of Military Review is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Chief Judge SULLIVAN and Judges COX and WISS concur.

CRAWFORD, Judge (concurring in the result):

Since this case should go back for a rehearing, I believe this Court has a responsibility to comment upon a clearly erroneous ruling by the Court of Military Review and reversible error in the military judge's instructions. I also believe that the majority misses an opportunity to reconcile Issue I with *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), by misapplying the law-of-the case doctrine. As a result, the majority fails to point out revers-

ible error in Issue II concerning the instructions on attempted unpremeditated murder.

## ISSUE I

### FACTS

Appellant, Private Maruca, and Mr. Henry met at a bar, became extremely intoxicated, and went to Mr. Henry's house where Mr. Henry performed allegedly nonconsensual sexual acts on Maruca. Thereafter, appellant became so incensed over Mr. Henry's acts that he set fire to Henry's bed while he was sleeping. He lived. When the soldiers returned to their unit, they told their non-commissioned officer (NCO) that Maruca had been raped but did not tell the NCO about setting fire to Mr. Henry's bed. On July 29, 1989, appellant related the same version to agents of the Criminal Investigation Command (CID). On August 8, 1989, appellant was called into the CID office. As was done on July 29, he was again advised of his Article 31, Uniform Code of Military Justice, 10 USC § 831, rights and told that he was suspected of misprision of felony, *i.e.,* homosexual rape. During part of the rights' warning, he invoked his right to remain silent and requested an attorney. Thereafter, appellant was released.

On August 30, 1989, appellant was apprehended, again advised of his rights, and this time informed that he was suspected of attempted murder, aggravated arson and larceny. He waived his rights, admitted that he had set fire to Mr. Henry's sofa, but denied any intent to kill Mr. Henry. The Court of Military Review held that there was a violation of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), even though they recognized that appellant was suspected of different offenses. More significantly, they did not discuss the effect of the break in custody from August 8 until August 30.

### DISCUSSION

#### A. Law of the Case Doctrine

The majority does not discuss the *Edwards* issue because of the law-of-the-case doctrine, *i.e.,* government appellate counsel failed to challenge the correctness of the ruling of the Court of Military Review. The "law of the case" doctrine, however, does not apply if the decision below would create "manifest injustice," *Dobbs v. Zant,* —— U.S. ——, ——, 113 S.Ct. 835, 836, 122 L.Ed.2d 103 (1993), or was "clearly erroneous," *Shore v. Warden, Stateville Prison,* 942 F.2d 1117, 1123 (7th Cir.1991). "Manifest injustice" and "clearly erroneous" are concepts equally applicable to decisions favoring the Government and to decisions favoring the defense. Here, the *Edwards* issue was briefed by the Government; the law-of-the-case doctrine evoked by the majority was not. At a minimum it would be appropriate for us to specify this issue and have it fully briefed. This is especially persuasive in view of the various ramifications for judicial economy and the administration of appellate review for both the defense and the prosecution. The majority cites for its proposition of the law of the case, *United States v. Sales,* 22 MJ 305, 307 (CMA 1986). The issue in that case was one of multiplicity. Based on the confusion in that area and the reluctance to tackle the issue, I do not believe that that case is determinative for us.

In recent years appellate defense counsel have questioned the independence of the Judge Advocates General because they have certified more issues on behalf of the Government than on behalf of the defense. *United States v. Mitchell,* 39 MJ 131, 139–40 (CMA 1994). The majority appears to send a message that in order to present an issue, the Government must have it certified. Apparently, briefing an issue in the context of issues raised by appellate defense counsel is not sufficient to preserve issues. The logic of this approach is particularly elusive since the unintended consequences of the majority's approach will be more certification of issues on behalf of the Government. *Cf. United States v. Schoof,* 37 MJ 96 (CMA 1993).

It may make sense to apply the law-of-the-case doctrine when there has not been a factual context to review, *Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), or when the issue has not been

briefed by the parties. However, it seems illogical to otherwise have an intermediate appellate court bind a higher appellate court. *New York Life Ins. Co. v. Hosbrook,* 130 Ohio St. 101, 196 N.E. 888 (1935). This is especially true here where the intermediate appellate court applied the harmless-error test and disposed of the case without addressing the *Edwards* issue.

As to the *Edwards* issue, I believe the Court of Military Review was "clearly erroneous" in terms of the precedents of the Supreme Court, as well as of this Court, *United States v. Schake,* 30 MJ 314, 319 (CMA 1990) (6–day break in custody "dissolve[s]" *Edwards* claim; Chief Judge Everett, concurring in the result, relied on the break in custody *and* the opportunity to consult counsel to distinguish *Edwards, id.* at 321); *United States v. Fassler,* 29 MJ 193 (CMA 1989) (court noted accused still in custody at time of second interview); *United States v. Brabant,* 29 MJ 259, 263 (CMA 1989) (suspect not given a "break in custody" between two interviews although there is no discussion of this "custody"). The decision below is also contrary to those of federal and state courts, *United States v. Hines,* 963 F.2d 255, 257 (9th Cir.1992), *citing United States v. Skinner,* 667 F.2d 1306 (9th Cir. 1982), *cert. denied,* 463 U.S. 1229, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983) (yielding the expression, a *"Skinner* Break"); *Dunkins v. Thigpen,* 854 F.2d 394 (11th Cir.1988), *cert. denied,* 489 U.S. 1059, 109 S.Ct. 1329, 103 L.Ed.2d 597 (1989) (pre-*Roberson* [*Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988) ] case holding *Edwards* inapplicable); *Willie v. State,* 585 So.2d 660, 667 (Miss.1991) (following other courts, Mississippi held that the *Edwards/Roberson* rule has no effect after there is "a non-contrived, non-pretextual break in custody where the defendant has reasonable opportunity to contact his attorney. . . ."); *State v. Norris,* 244 Kan. 326, 768 P.2d 296, 301–02 (1989) (claiming right to counsel does not bar later interrogation for an unrelated offense conducted after release from custody); *Bussard v. State,* 296 Ark. 556, 759 S.W.2d 24 (1988) (interrogation, 4 years after murder defendant's pretrial escape and after *Miranda*

warnings, and defendant agreed to make a statement about the escape and associated car theft but not about the murder for which he had originally had counsel, was proper; defendant no longer had counsel and had been at liberty for 4 years); *State v. Sadler,* 85 Or.App. 134, 735 P.2d 1267, *modified,* 86 Or.App. 152, 738 P.2d 601 (1987).

### B. *Edwards v. Arizona*

In *Edwards,* the Supreme Court held

that when an accused has invoked his right to have counsel present *during custodial interrogation,* a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

451 U.S. at 484–85, 101 S.Ct. at 1884–85 (emphasis added; footnote omitted).

Both *Edwards* and *Minnick v. Mississippi,* 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990), involved continuous custody. The purpose of *Edwards* is to prevent police from badgering a suspect into waiving his rights or to prevent police overreaching. *Griffin v. Lynaugh,* 823 F.2d 856, 861 (5th Cir.1987). This is because our system of justice is predicated on the concept that if police respect individual rights, *cf. Sanders v. State,* 182 Ga.App. 581, 356 S.E.2d 537 (1987), this ensures the accuracy of statements admitted at trial. Additionally, in *McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), the Court noted *in dictum* the requirement for continuous custody to trigger *Edwards,* stating:

If the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where

the suspect executes a waiver and his statements would be considered voluntary under traditional standards.

501 U.S. at 177, 111 S.Ct. at 2208 (emphasis added).

Finally, the Government is not relieved of its duties under *Edwards* if there is a contrived pretextual break in custody. *Willie v. State*, 585 So.2d 660 (Miss.1991).

Thus, the presence of a break in custody rendered the August 30 statement admissible.

## ISSUE II

### FACTS

The military judge first instructed the court members that the offense of attempted murder included the element "that this act was done with specific intent to commit the offense of *unpremeditated* murder." (Emphasis added.) The military judge went on to list the elements of unpremeditated murder, to include "at the time of the killing the accused had the intent to kill or inflict great bodily harm upon Mr. John D. Henry." The Government conceded this instruction was erroneous. Answer to Final Brief at 16. He then instructed on the meaning of the term "great bodily harm."

Subsequently, a panel member noted that the specification of Charge I stated "with premeditation." In response, the military judge stated, "You may consider my instruction on unpremeditated—attempted unpremeditated murder to be a lesser included offense of premeditated murder." He then instructed the panel on the elements of premeditated murder.

### DISCUSSION

Article 51(c), UCMJ, 10 USC § 851(c), requires the military judge to instruct court members on all the elements of the charged offenses. RCM 920(e)(7), Manual for Courts–Martial, United States, 1984, states, additionally, that the military judge shall provide the members with "[s]uch other explanations, descriptions, or directions as may be necessary and which are properly requested by a party or which the military judge determines, sua sponte, should be given."

Article 80, UCMJ, 10 USC § 880, defines an attempt as an "act, done with specific intent to commit an offense ..., amounting to more than mere preparation and tending, even though failing, to effect its commission." For a conviction of attempted murder to be sustained, this Court has repeatedly held that there must be a specific intent to kill. *See, e.g., United States v. Allen,* 21 MJ 72, 73 (CMA 1985). Specific intent to kill requires proof either of a premeditated design to kill or an intentional act, the natural and probable consequences of which will result in death. Para. 43c(2)(a) and (3)(a), Part IV, Manual, *supra.* Thus, it is apparent that,

> [a]lthough a serviceperson may be convicted of murder if he commits homicide without an intent to kill, but with an intent to "inflict great bodily harm," *see* Article 118(2), ..., [this] state[ ] of mind do[es] not suffice to establish attempted murder.

*United States v. Roa,* 12 MJ 210, 212 (CMA 1982).

Significantly, the panel found SPC Grooters guilty of the specification of Charge I, but excepted the words "with premeditation" and returned a finding of not guilty to the excepted words. Thus, it is apparent that the panel relied on the lesser-included offense of attempted *unpremeditated* murder. A finding of an intent to inflict great bodily harm would not support that conviction, although the panel was instructed that it could convict SPC Grooters on that basis.

As the Army Court of Military Review held in a similar case:

> Where a military judge erroneously instructs on the requisite intent [for attempted murder by including the instruction on intent to inflict great bodily harm] there is an appreciable risk that any findings of guilty were tainted and remedial action must be taken. This is true even though the trial defense counsel concurred in the military judge's instructions. The military judge has a *sua sponte* duty to fully in-

struct on the elements of the offense. A failure to so instruct amounts to "plain error" and corrective action must be taken.

*United States v. DeAlva*, 34 MJ 1256, 1258 (1992) (citations omitted).

Under the circumstances of this case, I would find plain error and reverse on this ground only.