UNITED STATES, Appellee,

v.

**Martin H. WIND, Airman, U.S. Navy, Appellant.**

No. 57,229.

NMCM 85 3823.

U.S. Court of Military Appeals.

Aug. 29, 1989.

For Appellant: *First Lieutenant Dwight H. Sullivan,* USMCR (argued); *Lieutenant Commander Rober J. Smith,* JAGC, USN (on brief); *Lieutenant Commander Alvin L. McDonald,* JAGC, USN.

For Appellee: *Lieutenant Commander L. Friedman,* JAGC, USN (argued); *Captain Wendell A. Kjos,* JAGC, USN (on brief); *Lieutenant Commander David A. Sabot,* JAGC, USN.

---

*Opinion of the Court*

EVERETT, Chief Judge:

The military judge, sitting alone as a special court-martial, tried Wind on two specifications of distributing methamphetamines aboard the USS KITTY HAWK, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. Contrary to his pleas, appellant was found guilty and

sentenced to a bad-conduct discharge, confinement for 3 months, forfeiture of $413.00 pay per month for 6 months, and reduction to pay grade E–1. After approval by the convening authority and affirmance by the Court of Military Review in an unpublished opinion, we granted Wind's petition for review to consider:

WHETHER THE MILITARY JUDGE ERRED WHEN HE FOUND THAT THE DECLARANT OF AN OUT–OF–COURT STATEMENT WAS UNAVAILABLE FOR PURPOSES OF INTRODUCTION OF THE STATEMENT UNDER MILITARY RULE OF EVIDENCE 804(a)(5) SOLELY ON THE BASIS THAT THE DECLARANT WAS A "FUGITIVE FROM JUSTICE."

## I

According to the government evidence, appellant had twice sold methamphetamines to an informant, Airman Mark Haywood, in February 1985. Defending on grounds of entrapment, Wind testified that Haywood had approached him many times with a view to buying drugs but that appellant had rejected those overtures. After Haywood kept pressing, appellant finally relented and obtained methamphetamines for him, because "he kept asking me and I felt very pressured into doing so and I was tired of the guy continuing to harass me to get him drugs and do drugs with him. I felt maybe if I would go get them for him, that he would forget about it and leave me alone." Wind also said that he was intimidated by the size of Haywood, who was six feet tall and weighed 235 pounds.

To rebut the entrapment defense, the Government attempted to show that Wind had a predisposition to sell drugs. In this connection, trial counsel offered as rebuttal a sworn statement made by Airman Apprentice Shawn Campbell to the Naval Investigative Service (NIS) subsequent to the alleged drug sales. According to this statement, Wind was one of "at least five" sailors on the USS KITTY HAWK to whom Campbell had sold methamphetamines.

Seeking to establish the statement's admissibility, the Government sought to show that Campbell was unavailable as a witness; and, to this end, trial counsel called Legalman First Class Gary Steighner, who was stationed aboard the USS KITTY HAWK. He testified that Campbell was "an unauthorized absentee," who had been tried *in absentia* and found guilty of distributing methamphetamines. Steighner also explained that Campbell had himself been facing charges and that, soon after his own trial had begun, he had absented himself. Thereupon, in order to prove that Campbell's absence was voluntary and that the trial could continue, Steighner and the Command Staff Judge Advocate, Lieutenant Commander D. B. Weber, had called local hospitals, shore patrol headquarters, the city jail, and the coroner's office. Despite their efforts, Campbell had not been located.

Apprised of these facts, the military judge ruled that Campbell was unavailable; and, in response to a defense argument, he commented:

Your point is—your argument is that they haven't even checked with a home of record or the family at that home of record. The point is well taken, however, Shawn Campbell is still a fugitive from justice. So on that basis alone, I feel justified in ruling that he is an unavailable declarant.

Further defense evidence and argument did not dissuade the judge from admitting the statement in evidence.

## II

Trial counsel offered Campbell's statement both as evidence of predisposition and to impeach Wind. Use of this evidence to show predisposition is questionable. Many people who possess or use drugs never sell them; and so some courts have held that, if an accused is tried for selling drugs and asserts an entrapment defense, evidence of his prior use or possession is inadmissible to establish his predisposition. *See, e.g.,* *United States v. Watson,* 489 F.2d 504 (3d Cir.1973); *United States v. Ewbank,* 483

F.2d 1149 (9th Cir.1973); *United States v. Venus*, 15 MJ 1095 (ACMR 1983).

◼ The relevance of Campbell's statement to impeach Wind is clearer. In his testimony, Wind professed that during his Naval career he had never used drugs and that he had had no contact with any drug transaction, except for the two distributions to Haywood. These he claimed to be aberrations, which resulted from intense pressure and "intimidation." On cross-examination, appellant denied ever purchasing drugs from Campbell or from anyone else other than someone named Rhymer— the sailor who supplied the methamphetamines that were delivered to Haywood. Campbell's statement tends to demonstrate that Wind's denial of familiarity with drugs was false and thereby discredited his credibility.

Usually, extrinsic evidence of a specific incident of misconduct by a witness is inadmissible to impeach his credibility. Mil.R. Evid. 608(b), Manual for Courts–Martial, United States, 1984. This limitation, however, does not apply if the extrinsic evidence also relates directly to matters in issue at trial. Here, by reason of his own claim that he had no contact with drug users or dealers, Wind gave to Campbell's statement a significance that it otherwise would have lacked. Accordingly, the statement was material enough to be received in evidence, unless it ran afoul of the hearsay and confrontation objections lodged by defense counsel.

In response to the hearsay objections, trial counsel claimed that Campbell's statement was admissible as a declaration against penal interest. For the statement to be admissible on this basis, the prosecution bore the burden of showing that Campbell was "unavailable as a witness." Mil. R.Evid. 804(b)(3). Moreover, it seems clear that, unless Campbell was unavailable, admission of his statement in evidence violated Wind's right of confrontation, his other objection.

As we have just reaffirmed in *United States v. Hubbard*, 28 MJ 27 (CMA 1989), unavailability of a witness requires a "good-faith effort" by the prosecution to obtain his presence at trial. *Cf. Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *Mancusi v. Stubbs*, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972); *Barber v. Page*, 390 U.S. 719, 724–25, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255, 260 (1968). Heretofore, we have stated that a servicemember who is absent without authority may be found unavailable to testify. *United States v. Douglas*, 1 MJ 354 (CMA 1976). Similarly, a court of appeals has recently ruled that a fugitive is unavailable as a witness. *See United States v. Lisotto*, 722 F.2d 85 (4th Cir.1983), *cert. denied*, 466 U.S. 905, 104 S.Ct. 1682, 80 L.Ed.2d 157 (1984). Here it appears from the military judge's comments that he, too, may have been applying a *per se* rule that an unauthorized absentee or a fugitive from justice may be deemed "unavailable," without any showing of an effort to locate him.

◼ Perhaps such a rule suffices insofar as a hearsay objection is concerned; but it is more questionable with respect to an accused's right of confrontation. *Cf. Ohio v. Roberts, supra.* In any event, we are convinced that the Government's efforts to locate Wind were extensive enough to demonstrate good faith. *Cf. United States v. Hubbard, supra.* Both at trial and on appeal, the defense has emphasized that the search for Campbell had been made by military authorities with a view to establishing that he had voluntarily absented himself from his own trial after his arraignment and that, consequently, his trial could proceed to a conclusion—just as it did. Even though the purpose of that search was different from that of a search intended to allow admission of evidence at trial, this difference in objective does not necessitate a different result on this issue.

As far as we can determine from the record of trial, military authorities had searched for Campbell with vigor and not merely by going through the motions. Admittedly, they had not tried to locate him at

his home of record, which was some distance away. However, their focus on a local search was quite reasonable, since Campbell apparently had been suffering from an incapacitating "drug high" which had interrupted his own trial. In our view, the Government did all that was necessary to show unavailability and thus satisfy appellant's right of confrontation.*

For Campbell's statement to the NIS to qualify as a declaration against interest, *see* Mil.R.Evid. 804(b)(3), it was necessary that, when he made the statement, he perceived that doing so would be against his interest. *Cf. United States v. Baran*, 22 MJ 265 (CMA 1986); *United States v. Koistinen*, 27 MJ 279, 283 (CMA 1988) (Everett, C.J., concurring). A statement is likely to be reliable if the declarant realized that it would harm him but he made it anyway. Since the declarant is unavailable to testify about his state of mind, the military judge must determine from the evidence before him what was the declarant's probable state of mind. However, it does not suffice for admissibility that, at a later time, a judge can conjure up some esoteric theory as to how in some way a statement made by an absent witness was contrary to his penal or pecuniary interest.

In this connection, we have been concerned about reception in evidence of statements that, if viewed technically, incriminated the declarant but which, in practical effect, probably benefited him. *Cf. Lee v. Illinois*, 476 U.S. 530, 541, 106 S.Ct. 2056, 2062, 90 L.Ed.2d 514, 526 (1986); *United States v. Guaglione*, 27 MJ 268 (CMA 1988). A good example of this is where one co-accused makes statements which acknowledge the declarant's criminal liability but which make the other co-accused seem much more culpable. In this instance, the declarant often expects that, by making such a statement, he will be able to obtain

dismissal of the charge, a favorable plea bargain, or some other benefit.

The Drafters' Analysis of Mil.R.Evid. 804(b)(3) adverted to this problem as follows:

In its present form, the Rule fails to address a particularly vexing problem— that of the declaration against penal interest which implicates the accused as well as the declarant. On the face of the Rule, such a statement should be admissible, subject to the effects, if any, of *Bruton v. United States*, 391 U.S. 123 [88 S.Ct. 1620, 20 L.Ed.2d 476] (1968) and Rule 306. Notwithstanding this, there is considerable doubt as to the applicability of the Rule to such a situation. *See generally*, 4 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE 804–93, 804–16 (1978). Although the legislative history reflects an early desire on the part of the Federal Rules of Evidence Advisory Committee to prohibit such testimony, a provision doing so was not included in the material reviewed by Congress. Although the House included such a provision, it did so apparently in large part based upon a view that *Bruton, supra*, prohibited such statements— arguably an erroneous view of *Bruton, supra*, see, e.g., *Bruton v. United States*, 391 U.S. 123, 128, n. 3 [88 S.Ct. 1620, 1623, n. 3, 20 L.Ed.2d 476] (1968); *Dutton v. Evans*, 400 U.S. 74 [91 S.Ct. 210, 27 L.Ed.2d 213] (1970). The Conference Committee deleted the House provision, following the Senate's desires, because it believed it inappropriate to "codify constitutional evidentiary principles" WEINSTEIN'S EVIDENCE at 804–16 (1978) citing CONG. REC. H11931–32 (daily ed. Dec. 14, 1974). Thus, applicability of the hearsay exception to individuals implicating the accused may well rest only on the extent to which *Bruton*,

---

* Where a statement by an absent witness has not been subjected to cross-examination and the witness has fled, the requirement of unavailability must be enforced vigorously. Thus, in *United States v. Hubbard*, 28 MJ 27 (CMA 1989), it was vital that the unavailability of Courtney be clearly proved, because he was the only eye-

witness of the murder and was essential to the Government's case. On the other hand, when a statement by a missing witness relates to a peripheral matter or has many indicia of reliability, more leeway may be granted the Government in proving that it has made a "good-faith effort" to locate the witness.

*supra,* governs such statement. The Committee intends that the Rule extend to such statements to the same extent that subdivision 804(b)(4) is held by the Article III courts to apply to such statements.

App. 22, Manual, *supra* at A22–47.

At trial, the Government contended that Campbell really had nothing to gain by naming Wind as one of the persons to whom he had distributed drugs. On the other hand, the defense contested the reliability of Campbell's statement and attempted to show that it was made in response to a suggestion by his NIS interrogator that he might receive better treatment if he cooperated and supplied the names of his drug customers.

■ Evidence such as former testimony which fits into a "well established" hearsay exception usually is admissible without corroboration or any specific demonstration of its trustworthiness. *Cf. Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); *Ohio v. Roberts, supra; United States v. Hubbard, supra* at 33. At common law, a statement against pecuniary interest was recognized as admissible hearsay; but a declaration against penal interest was not. This distinction was severely criticized, *United States v. Johnson,* 3 MJ 143, 147 (CMA 1977); *see Chambers v. Mississippi,* 410 U.S. 284, 299, 93 S.Ct. 1038, 1047, 35 L.Ed.2d 297, 311 (1973).

■ In our view, the rationale for admitting the declaration against penal interest is at least as strong as that for admitting a declaration against pecuniary interest. Therefore, we shall treat such declarations as coming within a "well established exception"; and such declarations may be admitted in evidence without the Government's offering corroboration or independent evidence as to the reliability of the declaration.

■ However, to get the benefit of this hearsay exception, the proponent of the evidence must prove not only the unavailability of the declarant but also that the evidence does fall within the exception. From the record before us, we conclude that the Government failed to carry this burden by demonstrating that it was against Campbell's self-perceived interest to make the statement. Accordingly, Campbell's statement should not have been admitted in evidence.

### III

The attention given to Campbell's statement at trial tended in some ways to magnify its importance. Consequently, its erroneous admission in evidence was more likely to be prejudicial.

However, this case was tried by a judge alone. Moreover, as appellate government counsel have noted, Wind's testimony about the lack of prior contact with drugs seems rather incredible. Certainly, it was unusual that Wind was able to purchase drugs on credit from Rhymer, with whom he claimed to have had only minimal prior contact. Furthermore, in his own confession, Wind made no claim of entrapment or mentioned being pressured to buy drugs from Haywood. Finally, the claim that Wind was "intimidated" by Haywood into selling him drugs is especially unconvincing.

Under these circumstances, we believe it appropriate for the judges of the Court of Military Review to express their views as to whether admission of Campbell's statement in evidence was harmless beyond a reasonable doubt.

### IV

The decision of the United States Navy–Marine Corps Court of Military Review is set aside, and the record of trial is returned to the Judge Advocate General of the Navy for remand to that court for further review.

COX, Judge (concurring):

I concur. *See United States v. Koistinen,* 27 MJ 279 (CMA 1988). I write only to make it clear that, to satisfy confrontation concerns, the hearsay must be reliable. Merely labeling a statement as a "declara-

tion against penal interest" is not enough. This is particularly true of confessions of co-adventurers. *Cruz v. New York*, 481 U.S. 186 (1987). Also, I do not subscribe to Chief Judge Everett's subjective test of whether a statement is against the maker's interest. The test is objective. Mil.R.Evid. 804(b)(3), Manual for Courts–Martial, United States, 1984.

SULLIVAN, Judge (concurring in the result):

I believe the error in this case was clearly harmless, but I have no objection to a remand to the court below to particularly address this question.