**UNITED STATES, Appellee,**

v.

**Ernest E. GREER, Jr., Aviation Machinist's Mate, U.S. Navy, Appellant.**

No. 64,814.

NMCM 88–3730.

U.S. Court of Military Appeals.

Argued Feb. 12, 1991.

Decided Sept. 30, 1991.

For Appellant: *Lieutenant Richard D. Ziegler,* JAGC, USNR (argued); *Lieutenant Wade W. Parrish* JAGC, USNR (on brief); *Lieutenant Jacob R. Walker,* JAGC, USNR.

For Appellee: *Lieutenant Gregory P. Belanger,* JAGC, USN (argued); *Commander Thomas W. Osborne,* JAGC, USN, and *Lieutenant L. Lynn Jowers,* JAGC, USN (on brief).

*Opinion of the Court*

EVERETT, Senior Judge:

In May and June of 1988, a general court-martial with members tried Greer at the Naval Legal Service Office in Subic Bay, Republic of the Philippines. Appellant pleaded not guilty to the numerous charges against him; but he was convicted of three specifications of theft of government aircraft parts and three specifications of wrongful sale of the same property, in violation of Articles 121 and 108, Uniform Code of Military Justice, 10 USC §§ 921 and 908, respectively. His sentence was a bad-conduct discharge, 18 months' confinement, and a fine of $1,000 that was subject to enforcement by additional confinement not in excess of 1 year.

The convening authority approved the sentence except for changing the fine to a forfeiture of $500 pay per month for 2 months; and the Court of Military Review affirmed the findings and sentence in a short-form opinion. We granted this issue for review:

WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW ERRED IN HOLDING THAT THE STATEMENTS OF LUCY FERNANDEZ AND ERICO STA ELENA WERE PROPERLY ADMITTED UNDER MIL.R.EVID. 804(b)(3).

Having determined that the statements were improperly admitted over defense objection, we will remand the case to the Court of Military Review for further proceedings.

I

A

In the winter of 1988, Criminal Investigator Alfonso[1] learned from an informant that a Philippine National, Erico Sta Elena, was selling stolen aircraft parts that he was obtaining from a petty officer in the United States Navy. The informant also told Alfonso that on February 24, 1988, Sta Elena would be bringing to him samples of the aircraft parts that currently were "available for sale." Alfonso then requested the assistance of the Philippine Constabulary Criminal Investigation Service (CIS); and the ensuing surveillance culminated in Sta Elena's apprehension by the Philippine authorities while he was in possession of stolen military aircraft parts.

Sta Elena was taken to the CIS office for interrogation. Before confessing, he was warned by his Philippine interrogator, "I shall take your statement regarding your participation in the thefts of aircraft parts at the U.S. Naval Facility." Then he was apprised of his "rights under the New Con-

stitution of the Philippines" and was specifically advised "that anything you say in this investigation may be used for and against you." Following these warnings, Sta Elena signed a "Certification" that he was of legal age (37 years old); that he had been "advised of" his "rights under the New Constitution of the Philippines"; that he "understood" those rights; that "at this time he did not need the assistance of a lawyer"; and that "I have a sound mine [sic] and I swear that I shall state the truth in this investigation."

Sta Elena then admitted, among other things, sales of stolen aircraft parts for Greer, who was taking them from the U.S. Naval Facility where he worked. Sta Elena described aircraft parts he had sold for appellant at various times in December 1987 and during the first week of January 1988. He disclosed the total amount of money that he had turned over to Greer as proceeds of the sales and the commissions that he had received from appellant for his services. The questions and answers in the interview were reduced to writing in Tagalog; and later they were translated into English by Alfonso, who was proficient in both languages.

After giving the statement to CIS agents, Sta Elena agreed to cooperate with the Naval Investigative Service (NIS) and Philippine authorities in arranging controlled purchases of stolen aircraft parts from appellant. The buyer was to be Criminal Investigator Villanueva, an undercover Philippine police detective assigned to work with NIS.

Lucy Fernandez, a Philippine National, cohabited with Greer in his apartment, where the controlled purchases were to be made. She made the first sale, which took place on or about March 1, 1988. Then Greer himself sold Villanueva various sto-

---

**1.** The status of Alfonso is not entirely clear from the trial record. He was referred to "as a Criminal Investigator of NISRA, Cubi Point," but he was never stated to be a special agent of the Naval Investigative Service (NIS). However, he testified that "I conduct investigations. I interview people. I also obtain sources or confiden-

tial informants." Apparently, he was a local Philippine police officer assigned to the NIS to investigate crime of mutual interest to both the United States and the Philippine authorities, especially since he was fluent in both Tagalog and English. However, the record did indicate that he is a civilian.

len aircraft parts on March 13 and 15. Upon completing the latter transaction, Villanueva and other NIS agents apprehended appellant in his apartment.

Lucy, who was there at the time, was questioned about her relationship with Greer; and she replied, "We are live in partners." Alfonso also asked her to whom the aircraft parts belonged, and she "pointed to" Greer. When queried if any other parts were in the apartment, she indicated that "some more parts" were there and gave the investigators consent to search. The search proved fruitful for the investigators.

Following the search, both Lucy and Greer were taken to the NIS office. He admitted to taking a large number of aircraft parts from the military and transferring them to Sta Elena. However, Greer stated that he had taken the parts because he was conducting his own private investigation into the loss of such military items.

Investigator Alfonso also asked Lucy Fernandez for a statement, and she complied. Initially, the statement was taken orally in Tagalog; then it was reduced to writing in Tagalog; and finally it was translated into English. Before questioning Lucy, Alfonso asked her if she understood that she was in the office of the NIS "in connection with the aircraft parts found by the personnel of NISRA Cubi Point, and the Olongapo City Police, during a search conducted inside your house ..."

Thereafter, Lucy stated that she was a Filipino citizen; that she had been born on April 21, 1968; that she had only finished the fifth grade; and that "I am single but presently living with my live in partner Ernest Greer, a U.S. servicemember assigned at the Air Craft Intermediate Maintenance Department (AIMD), U.S. Naval Air Station, Cubi Point, RP."

When questioned about the aircraft parts found inside their apartment, she stated that they belonged to Greer. "He has been bringing home those parts from his place of work for subsequent resale." This had

occurred on various occasions between January and March 1988. In addition, Lucy explained that Greer sold the parts by contacting Sta Elena, who in turn would contact buyers. However, she stated that she had not known that the parts had been stolen.

**B**

Fernandez and Sta Elena could not be located when Greer's trial began. However, to prove Greer's larceny and sale of the purloined aircraft parts, the Government sought to introduce the written statements of the two Filipinos.

Defense counsel objected to admission of both statements on the ground that their reception in evidence would violate appellant's Sixth Amendment right of confrontation and that the statements were unreliable, since neither of the witnesses had been subject to cross-examination. Defense counsel pointed out that Sta Elena himself had been facing criminal prosecution when he made the statements. As for Lucy Fernandez, the defense contended that no inquiry had been made into her educational ability to understand the statement that she had given to the NIS agent.

Trial counsel contended, however, that Sta Elena's statement was admissible under Mil.R.Evid. 801(d)(2)(E), Manual for Courts–Martial, United States, 1984, as a statement of a co-conspirator; under 804(b)(3) as a statement against penal interest; under 803(24) as residual hearsay; or was admissible "because it is not offered as the truth of the matter asserted, but to show that the foundation of the existence of a conspiracy between Eric Sta Elena and the accused...." Trial counsel took a similar position as to the admissibility of the statement of Lucy Fernandez.

After ruling that both Sta Elena and Lucy were not "available" to testify, the military judge decided that each of the statements qualified for admission as a statement against interest under Mil. R.Evid. 804(b)(3).[2] With regard to Sta Elena's statement, he explained:

---

2. The judge expressed doubt that the statements

to Philippine authorities could be viewed as "in

At the time he made the statement, he was suspected of a criminal offense under Philippine law. He made a confession to Philippine authorities in that regard. While he may have wanted to minimize the degree of his involvement, to the extent that he confessed to being a principal in the disposal of stolen property is, in and of itself, of such an incriminating nature that Mr. Sta Elena would not have likely made it unless it was true. *Moreover, the contents of the statement are substantially corroborated by ... the accused's confession which we litigated yesterday.*

(Emphasis added).

As to Lucy's statement, he added:

The statement of Lucy Fernandez is also admissible under this same rule, 804(b)(3) since, as the girlfriend of the accused, dependent upon his financial support for the place she lives in, it is highly unlikely that she would have implicated herself or the accused unless such matters were true. *And also her statement is corroborated by the accused's confession as well as the testimony of Special Agent Geiger, Criminal Investigator Alfonso, and Special Agent Swear.*

(Emphasis added).

Greer contended before the Court of Military Review, as he does here, that both statements were improperly admitted into evidence under Mil.R.Evid. 804(b)(3). However, citing *United States v. Hines*, 23 MJ 125, 128 (CMA 1986), and *United States v. Koistinen*, 27 MJ 279 (CMA 1988), the court below upheld the conviction.

## II

### A

With commendable candor, the Government concedes that the statement of Lucy Fernandez should not have been received into evidence. Its brief states:

The Government does not assert that the statement was against Ms. Fernandez' penal interest. She was not arrest-

ed by Philippine officials, she was not warned of her rights under either the U.S. or Philippine constitutions, she was questioned by NIS not CIS, and she did not know that the parts were stolen. Neither does the Government argue admissibility under Mil.R.Evid. 804(b)(5). Ms. Fernandez' statement is not more probative of appellant's guilt than the testimony of the undercover agent who purchased the stolen property from appellant. *See* Mil.R.Evid. 804(b)(5)(B).

Furthermore, the Government acknowledges that the military judge had no basis for finding on the evidence before him that the statement by Lucy was contrary to her pecuniary interest. Contrary to the judge's rationale, the circumstance that Lucy was cohabiting with Greer in an apartment was not enough to establish that she would have recognized that it was against her pecuniary interest to make her statement to NIS.

The Government contends, however, that "[t]he statement of Erico Sta Elena ... was admissible, at least in a redacted form, as a statement against the declarant's penal interest under Mil.R.Evid. 804(b)(3); and, any error associated with its unredacted admission was harmless."

Mil.R.Evid. 804(b)(3) provides in pertinent part:

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness.

\*　　\*　　\*　　\*　　\*　　\*

(3) *Statement against interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the position of the declarant would not have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal

---

furtherance of" any conspiracy—as required by                    Mil.R.Evid. 801(d)(2)(E).

liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

At first glance, Sta Elena's statement might seem to fit within this language. Insofar as unavailability of the declarant is necessary for admissibility, the defense has not contested the military judge's finding that both Sta Elena and Lucy Fernandez were unavailable as witnesses. Indeed, the record demonstrates that the Government had been diligent in its quest to produce both witnesses in court. It was confronted, however, by the apparently insuperable obstacle that both witnesses were Philippine nationals who were beyond the jurisdiction of the court-martial; and, as the military judge stated, "No orders from this court or any other U.S. authorities can secure the witness[es]."

In Sta Elena's statement, he admitted that he had participated in selling stolen military aircraft parts; and undoubtedly this conduct constituted a crime for which he could be tried in a local court. Indeed, he already had been arrested by Philippine authorities. Thus, it might seem that his statement was against his penal interest.

■ The criterion, however, is not whether a declarant's statement might be admissible to help convict him if at some later time he were brought to trial but, instead, whether the declarant would himself have perceived at the time that his statement was against his penal interest. *United States v. Wind*, 28 MJ 381, 384 (CMA 1989); *United States v. Dillon*, 18 MJ 340, 345 (CMA 1984); *United States v. Baran*, 22 MJ 265, 268 (CMA 1986) (Everett, C.J., concurring). The requirement that the declarant believe that his statement is contrary to his penal or pecuniary interest stems from the common-sense proposition that "someone usually does not make a statement that may send him to jail or cost him money unless he believes it to be true." *See United States v. Baran*, *supra* at 268. On the other hand, in making statements from which a benefit may be derived, a declarant often has less concern with truthfulness; so there is a special need to subject such statements to the safeguard of cross-examination.

■ In the present case, it seems clear that Sta Elena believed that his statement to the Philippine investigators was very much in his own interest and might forestall a prosecution. Indeed, the investigator who interrogated Sta Elena had advised him "[t]hat anything you say in this investigation may be used *for* and against you." (Emphasis added.)

The interaction between Sta Elena and his interrogators is described in this portion of Alfonso's testimony:

Q: Now, Mr. Sta Elena, what did he get in return for cooperating with you?

A: Actually, it was the CIS, who had talked to this man to help in the apprehension of Mr. Greer. And well, I think, he did it just because *he wanted to clear himself also. Because the CIS believed that he is actually the one stealing those parts.*

Q: *So, in other words to forgo his own prosecution?*

A: *Yes.*

Q: *For crimes?*

A: *Yes, in a sense, yes.*

Q: That's why he cooperated with you?

MJ: Excuse me. I don't think that is what the witness said. Let me clear up something. Did Mr. Sta Elena, cooperate with you or with CIS?

WITNESS: With the CIS and with me also, sir.

MJ: Alright. Correct, good enough.

(Emphasis added.)

■ According to his own statement, Sta Elena was Greer's accomplice in the crime of selling stolen aircraft parts. The unreliability of the accusations of an erstwhile accomplice is well known. *Cf. Lee v. Illinois*, 476 U.S. 530, 106 S.Ct.2056, 90 L.Ed.2d 514 (1986); *United States v. Dill*, 24 MJ 386, 387–88 (CMA 1987). For this very reason, an accused may have court-martial members instructed that an accomplice's testimony at trial must be viewed

with caution, *United States v. McKinnie*, 32 MJ 141 (CMA 1991); and sometimes courts refuse to uphold the conviction of an accused if it is based solely on an accomplice's uncorroborated testimony. *See, e.g., United States v. Aguinaga*, 25 MJ 6 (CMA 1987).

Not merely the proper application of the hearsay prohibition, but also the right of confrontation, is involved here. Greer never had an opportunity to confront Sta Elena with respect to the portions of his statement that implicated appellant. Even without the statement being subjected to cross-examination, its reliability might be inferred if it fell "within a firmly rooted hearsay exception." *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). However, as has already been explained, Sta Elena's statement does not fall within such an exception.[3]

■ The Supreme Court has stated that "the post arrest statements of a codefendant have traditionally been viewed with special suspicion. Due to his strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence." *Lee v. Illinois, supra*, 476 U.S. at 541, 106 S.Ct. at 2062 (quoted in *United States v. Dill, supra* at 387). Regardless whether the Philippine authorities ultimately prosecuted Sta Elena or dropped charges against him, this observation by the Supreme Court seems applicable to his post arrest statement to the Philippine authorities; so the statement was "presumptively suspect." *See United States v. Dill, supra* at 387.

To rebut the presumption that Sta Elena's out-of-court statement was unreliable, it was necessary for the Government to show "particularized guarantees of trustworthiness," so that "the declarant's truth-fulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility." *Idaho v. Wright*, —— U.S. ——, ——, 110 S.Ct. 3139, 3148–49, 111 L.Ed.2d 638 (1990). According to the Supreme Court's analysis in *Wright*, the circumstances that go into this analysis "are those that existed at the time the [hearsay] statement was made and do not include those that may be added by using hindsight." 110 S.Ct. at 3149, *quoting Huff v. White Motor Corp.*, 609 F.2d 286, 292 (7th Cir.1979). Furthermore, *Wright* made clear that use of corroborating evidence to validate the hearsay testimony is impermissible in deciding whether reception of an extrajudicial statement in evidence violates a defendant's right of confrontation.

In admitting Sta Elena's statement, the military judge concluded that it was reliable because "the contents of the statement are substantially corroborated by ... the accused's confession...." This use of Greer's confession to justify reception of Sta Elena's statement clearly violated the precepts of *Wright;* so reception of the statement in evidence was erroneous.

### B

The final issue is whether Greer suffered any harm from the erroneous reception of the two hearsay statements in evidence. Under the circumstances, we believe it appropriate for the Court of Military Review first to express its view as to whether admission of the statements in evidence was harmless beyond a reasonable doubt as to any or all of the findings of guilty.

### III

The decision of the United States Navy-Marine Corps Court of Military Review is set aside, and the record of trial is returned

3. In *United States v. Dill*, 24 MJ 386 (1987), we commented that "statements against penal interest are of recent derivation and are not 'firmly rooted' exceptions to the hearsay rule." *Id.* at 387–88. Subsequently, in *United States v. Wind*, 28 MJ 381, 385 (1989), we stated that we would "treat" declarations against penal interest "as coming within a 'well established exception'; and such declarations may be admitted in evidence without the Government's offering corroboration or independent evidence as to the reliability of the declaration." Of course, Sta Elena's statement did not meet the requirements of a declaration against penal interest.

to the Judge Advocate General of the Navy for remand to that court for further review.

Chief Judge SULLIVAN concurs.

COX, Judge (concurring):

I write only to maintain the position I expressed concurring in *United States v. Wind,* 28 MJ 381, 385–86 (CMA 1989). Furthermore, even under our opinion in *United States v. Yeauger,* 27 MJ 199, 202 (CMA 1988), *cert. denied,* 490 U.S. 1005, 109 S.Ct. 1638, 104 L.Ed.2d 154 (1989), admissibility of these statements would be questionable. *See also Idaho v. Wright,* —— U.S. ——, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).