UNITED STATES, Appellee,

v.

Specialist Patrick A. GROOTERS,
385–88–3375, United States
Army, Appellant.

ACMR 9001466.

U.S. Army Court of Military Review.

29 May 1992.

Reconsideration Denied 30 June 1992.

**660**

For Appellant: Captain Timothy M. Lawlor, JAGC (argued); Major Michael B. Kelleher, Captain Michael P. Moran, JAGC (on brief).

For Appellee: Major Edith M. Rob, JAGC (argued); Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Thomas E. Booth, JAGC (on brief).

Before JOHNSON, WERNER, and GRAVELLE, Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial composed of officer and enlisted members of attempted murder, in violation of Article 80, Uniform Code of Military Justice, 10 U.S.C. § 880 (1982) [hereinafter UCMJ]. His approved sentence provides for a bad-conduct discharge, confinement for 36 months, total forfeiture of all pay and allowances, and reduction to Private E1.

### I.

During the evening of 28 July 1989, the appellant and a fellow soldier, Private (PVT) Maruca, visited a German night club to celebrate PVT Maruca's birthday. At the club they met Mr. Henry, an American civilian employed with a local aviation repair firm. Mr. Henry struck up a conversation with the appellant and PVT Maruca and, when the club closed, invited them to his apartment for more drinks and to spend the night. Already intoxicated, the appellant and PVT Maruca accepted Mr. Henry's offer.

After drinking more beer at Mr. Henry's apartment, both soldiers fell asleep in Mr. Henry's living room; PVT Maruca on a sofa and the appellant in an easy chair. During the early morning hours, the appellant was awakened when Mr. Henry tried to spread the appellant's legs apart. The appellant was able to turn away Mr. Henry's homosexual advance by feigning to be asleep. Mr. Henry then approached PVT Maruca and began to engage in homosexual acts with him. The appellant, now fully awake, watched as Mr. Henry performed fellatio on PVT Maruca and then engage in anal sodomy with him. The appellant remained awake feeling "disgusted, scared, and confused." The evidence of record reflects disagreement as to whether PVT Maruca was conscious or whether his behavior was consensual. The appellant stated that he also saw PVT Maruca perform fellatio on Mr. Henry; however, PVT Maruca testified at trial that, as a result of being heavily intoxicated, he could not remember whether these acts occurred, but only remembers pushing someone off him.

When PVT Maruca awoke on the morning of 29 July, he noticed that the sofa upon which he was sleeping was damp and that Mr. Henry was asleep nearby on the floor with a bottle of lighter fluid in his hand. Private Maruca testified that the appellant was standing over him saying Mr. Henry was a "fag;" that he was "going to kill the motherfucker;" that Mr. Henry was "probably going to kill us;" and that the appellant appeared to be very angry. Several minutes later, as the appellant and PVT Maruca were about to leave Mr. Henry's apartment, the appellant stopped and, over PVT Maruca's objection, set a match to the sofa. The two then fled the apartment. Soon thereafter, Mr. Henry awoke to find his sofa on fire. He also observed that the ceiling and walls of his apartment had been burned. Mr. Henry extinguished the fire, but did not immediately report the incident because he was embarrassed about revealing his homosexual conduct with PVT Maruca.

Later that morning, PVT Maruca reported that he had been homosexually raped and sought medical treatment at the Wiesbaden Medical Center. Private Maruca and the appellant then made statements to agents of the local Criminal Investigation Command (CID) describing what had occurred at Mr. Henry's apartment. However, neither one said anything about the appellant having set Mr. Henry's sofa on fire. Later that day, Agent Grass reinterviewed the appellant in the course of investigating him for misprision of a serious offense.[1] Information obtained from the appellant's platoon sergeant led Agent Grass to believe that PVT Maruca had engaged in the homosexual acts voluntarily and that the appellant may have been protecting PVT Maruca. The appellant waived his rights and stated that during the evening at Mr. Henry's apartment, he had observed Mr. Henry committing both oral and anal sodomy with PVT Maruca. The appellant again said nothing about having set fire to the sofa.

On 8 August 1989, the appellant was recalled to the CID office by Agent Grass to be reinterviewed about the misprision offense. However, the appellant invoked his Article 31, 10 U.S.C. § 831 rights to remain silent and to the presence of an attorney. Agent Grass terminated the interview and released the appellant to his unit.

Upon learning that the police were looking for him in connection with this case, Mr. Henry fled Germany and returned to the United States. Approximately one month later, after consulting with an attorney, Mr. Henry returned to Germany, contacted Agent Grass, and informed him of his willingness to cooperate in the investigation. On 29 August 1989, Mr. Henry made a sworn statement to Agent Lopez in which he admitted that he had consensual oral and anal sodomy with PVT Maruca; that a fire had been set in his apartment while he was asleep; and that some money had been stolen from his wallet. He subsequently showed Agents Grass and Lopez

his fire-damaged apartment and made another sworn statement clarifying his first statement. Then, Mr. Henry abruptly left Germany, this time for employment in the Kingdom of Saudi Arabia. When he was later contacted by the government and offered invitational travel orders to return to Germany to testify against the appellant, he declined the invitation.

On 30 August 1989, the appellant was apprehended by the CID. This time the special agent in charge, Agent Williams, interrogated the appellant on suspicion of attempted murder, aggravated arson, and larceny. After advising the appellant of his Article 31 rights, Agent Williams asked the appellant if he "had been interviewed or advised of his rights about the matter in the past." The appellant replied in the negative and waived his right to counsel. The appellant then admitted that he set fire to Mr. Henry's sofa because he wanted to exact retribution from Mr. Henry for having sodomized PVT Maruca. The appellant denied any intent to kill Mr. Henry.

In an Article 39(a), pretrial session, the defense moved to suppress the appellant's 30 August statement. The government called Agent Williams who testified that he advised the appellant he was suspected of committing the offenses of attempted murder, aggravated arson, and larceny and that the appellant elected to waive his rights and consent to the interview. Due to an oversight on his part, Agent Williams failed to ask the appellant if he had been advised of his Article 31 rights for any other offense within the past thirty days. He indicated that it was a standard practice of CID to ask this of a suspect. Furthermore, although he was in possession of the appellant's CID case file containing the rights advice form signed by the appellant on 8 August, Agent Williams testified that he was unaware that the appellant had previously invoked his rights.

The military judge denied the motion to suppress "based upon the preponderance of evidence that the [appellant's] right to counsel ... has not been denied, nor do I

---

1. Misprision or concealment of a serious offense is punishable as a violation of Article 134, UCMJ, 10 U.S.C. § 934. *See* Manual for Courts–Martial, 1984, Part IV, para. 95.

find any violation of the accused's 5th Amendment right as it has been defined in the case of *Edwards versus Arizona* has been denied [sic] during the course of the interrogations of him...."

## II.

█ The appellant first contends that the military judge erred by admitting into evidence his statement of 30 August 1989, to Agent Williams on grounds that it was taken in violation of his fifth amendment right to the presence of an attorney during questioning. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Minnick v. Mississippi,* 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). The government counters by maintaining that Agent Williams' interview of the appellant, albeit nominally in violation of *Edwards* and *Minnick,* was excusable since he had no knowledge of the appellant's prior request for counsel. Furthermore, as the appellant denied having previously been advised of his right to counsel, he should now be estopped from claiming that Agent Williams acted improperly by interviewing him without counsel present. *United States v. Harris,* 19 M.J. 331 (C.M.A.) (Cox, J., concurring) (remanded for DuBay hearing), 21 M.J. 173 (C.M.A. 1985) (summary disposition, reversing in part, 16 M.J. 562 (A.C.M.R.1983)).

█ We decline to apply either a "good faith" or estoppel exception to the "bright line" rule of *Edwards.* The fact that the offenses that were the subject of the 30 August interrogation (larceny, aggravated arson, attempted murder) were different from that of 8 August (misprision of a serious offense) does not affect our holding. Even though Agent Williams stated he did not know the appellant had requested an attorney on 8 August, that knowledge is imputed to him as a matter of law. *Harris,* 19 M.J. 331. *See also Arizona v. Roberson,* 486 U.S. 675, 687–88, 108 S.Ct. 2093, 2101, 100 L.Ed.2d 704 (1988); *United States v. Lenfesty,* 923 F.2d 1293, 1297 (8th Cir.1991); *United States v. Fassler,* 29 M.J. 193 (C.M.A.1989); *United States v. Sager,* 30 M.J. 777, 784 (A.C.M.R.1990).

We also are persuaded that Agent Williams should have known of the appellant's request for counsel on 8 August as he had access to documents in the file reflecting the appellant's request for counsel to Agent Grass. *See United States v. Applewhite,* 23 M.J. 196 (C.M.A.1987). Accordingly, the military judge should have suppressed the statement.

## III.

The appellant next contends that the military judge erred when he admitted, over defense objection, Mr. Henry's statements of 29 August, in violation of the appellant's sixth amendment right of confrontation. The government asserts that the judge's admission of the statements was warranted under Manual for Courts–Martial, United States, 1984, Mil.R.Evid. 804(b)(3) and Mil. R.Evid. 804(b)(5) [hereinafter Mil.R.Evid.]. We find that the military judge erred by admitting the statements.

█ Military Rule of Evidence 804(b)(3) defines a statement made against interest as:

A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the position of the declarant would not have made the statement unless the person believed it to be true.

"The requirement that the declarant believe that his statement is contrary to his penal or pecuniary interest stems from the common-sense proposition that 'someone usually does not make a statement that may send him to jail or cost him money unless he believes it to be true.'" *United States v. Greer,* 33 M.J. 426, 430 (C.M.A. 1991) (citing *United States v. Baran,* 22 M.J. 265, 268 (C.M.A.1986) (Everett, C.J., concurring)). Conversely, a declarant whose statement might produce a benefit, often has less concern with truthfulness. Therefore, there exists a special need to subject such statements to cross-examination. *Greer,* 33 M.J. at 430.

We hold that Mr. Henry did not make his statements while under the belief that they were contrary to his proprietary or penal interests. Although he was informed that he was being interviewed by the CID on suspicion of forcible sodomy, Mr. Henry specifically stated that "[t]hese allegations are false" and then proceeded to relate in detail the events of the evening. The statements merely relate that Mr. Henry invited two American soldiers whose names he did not know to his apartment and that he engaged in consensual homosexual acts with one of them. When he awoke the following morning, his apartment was on fire and the soldiers had departed. The statements do not reflect that Mr. Henry believed he was subjecting himself to any civil or criminal liability. Furthermore, there was no evidence presented that Mr. Henry's homosexual conduct violated German law or would have adversely affected his employment or other proprietary interests.

■ The government argues, alternatively, that the statements could properly have been affirmed on grounds other than those determined by the military judge and invites us to affirm under Mil.R.Evid. 804(b)(5). *See United States v. Leiffer,* 13 M.J. 337, n. 10 (C.M.A.1982) (citing *Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937) and *United States v. Allen,* 629 F.2d 51, 57 (D.C.Cir. 1980)). Military Rule of Evidence 804(b)(5) states that hearsay statements can be admitted into evidence which are not:

specifically covered by any of the [other 804(b) exceptions] but [which] have equivalent circumstantial guarantees of trustworthiness, if the military judge determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative of the point for which it is offered than any other evidence which the proponent can

procure through reasonable efforts; and (C) the general purposes of these rules and the interest of justice will best be served by admission of the statement into evidence.

We hold that Mr. Henry's statements fail the test for admissibility under this rule. While Mr. Henry's statements contained material facts, they are not more probative on the point for which they were offered than any other evidence the government could procure through reasonable efforts. This evidence includes the in-court testimony of the only eye-witness to the appellant's actions; color photographs depicting the degree of damage caused by the fire; and a sworn statement from the appellant admitting his presence at Mr. Henry's apartment. We find this evidence to be much more probative on the issue of the appellant's guilt than the self-serving statements of an absent victim which fail to identify the appellant with any degree of specificity.[2]

### IV.

■ The above findings of error notwithstanding, we hold that the harmless error/specific prejudice standard should be applied in this case. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Fisher,* 21 M.J. 327 (C.M.A.1986); *United States v. Remai,* 19 M.J. 229 (C.M.A.1985). Applying that standard, we find the statements to be cumulative of other evidence presented at trial for the reasons set out below, and are satisfied that their admission was harmless beyond a reasonable doubt.

The only disputed issue in this case was whether the appellant intended to kill Mr. Henry when he set fire to the sofa. On that issue, the appellant's statement specif-

---

**2.** Moreover, we question, but need not decide at this time, whether a statement given by a declarant under circumstances as described herein has the equivalent circumstantial guarantees of trustworthiness necessary for admission under this rule. *See Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990); *United States v. Moreno,* 31 M.J. 935 (A.C.M.R.1990).

Additionally, we note that the record is silent as to whether the notice requirement of Mil. R.Evid. 804(b)(5) was properly met in this case. However, given the pretrial litigation on this issue, we believe that the appellant was adequately put on notice and had a fair opportunity to respond.

ically denied such an intent. Although he admitted that he started the fire, the appellant denied using an accelerant or intending to kill Mr. Henry but merely intended to damage Mr. Henry's property. At trial, the appellant testified in his own defense and affirmed virtually everything in the pretrial statement. Instead of harming the appellant, his testimony was consistent with his pretrial statement and thereby reaffirmed his earlier denial of an intent to kill Mr. Henry. *See United States v. Perry,* 46 C.M.R. 636 (A.C.M.R.1972) (an appellant's denial of intent to kill contained in his pretrial statement, is competent evidence of lack of intent).

Likewise, Mr. Henry's statements added little to the evidence otherwise admitted. Moreover, they do not add legitimacy to the government's case against the appellant. On the critical facts, the statements merely say that Mr. Henry engaged in consensual homosexual acts with an unknown American soldier and that his apartment was on fire when he awoke the following morning. These facts were well-established by other competent evidence at trial to include: the testimony of PVT Maruca; the appellant's first pretrial statement (the admissibility of which is not challenged); photographs showing the damage sustained to Mr. Henry's apartment; the various stipulations of testimony from Mr. Henry's landlord; and the in-court testimony of the appellant himself. Mr. Henry did not, nor could he, identify the individual who actually started the fire or what the person's motive may have been.

### V.

■ Finally, the appellant argues that the evidence is both factually and legally insufficient to support a finding of guilty of attempted murder. The government disagrees and argues that the circumstantial evidence presented at trial more than adequately satisfies the intent to kill element of attempted murder. We find that the evidence of intent to kill is persuasive beyond a reasonable doubt.

The offense of attempted murder requires proof of a specific intent to kill.

*United States v. Allen,* 21 M.J. 72 (C.M.A. 1985); *United States v. Carroll,* 27 C.M.R. 90 (C.M.A.1958). This intent may be proven by the use of circumstantial evidence. "In determining whether or not the intent to kill should be inferred the trier of facts may properly consider the character of the weapon employed and the way it was used; the manner of the assault ...; the state of feeling existing between the parties at and anterior to the difficulty; statements of the defendant, if any, and all other facts and circumstances tending to reveal defendant's state of mind...." *Perry,* 46 C.M.R. at 639 (quoting *Craig v. State,* 205 Ark. 1100, 172 S.W.2d 256, 257 (1943)).

In this case, the appellant possessed a self-proclaimed hatred of homosexuals whom he thought should burn in hell. He was extremely angry at Mr. Henry for his homosexual advance towards him and his acts of oral and anal sodomy with PVT Maruca. The appellant's statement to PVT Maruca just before setting the sofa on fire that he "was going to kill the motherfucker" (Mr. Henry), could reasonably be interpreted literally by the factfinders. Additionally, the circumstances surrounding the appellant's setting of the fire in Mr. Henry's apartment indicate that he planned his actions before performing them. The sofa was dampened by a liquid accelerant; a can of charcoal lighting fluid was placed in Mr. Henry's hands while he was asleep on the floor; and, just as they were leaving the apartment, PVT Maruca saw the appellant touch a match to the sofa and the ensuing smoke.

We find that the court members could have found the essential elements of this offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *reh'g denied,* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979). Examining the evidence of record for factual sufficiency, making allowances for not having personally observed the witnesses, and noting the errors discussed above, we are convinced of the appellant's guilt beyond a reasonable doubt. UCMJ

art. 66(c), 10 U.S.C. § 866(c); *United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

The remaining assignment of error is without merit. Having considered those issues personally raised by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), we find them to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge JOHNSON and Judge GRAVELLE concur.